**GIESECKE v. PITTSBURGH HOTELS, Inc., et al.**

**FORT PITT HOTEL, Inc., v. SAME.**

**Appeal of GIESECKE.**

**No. 8857.**

Circuit Court of Appeals, Third Circuit.

Argued Oct. 8, 1945.

Decided Nov. 27, 1945.

As Amended Dec. 7, 1945.

As Further Amended on Denial of Rehearing Jan. 4, 1946.

690

Harold C. Ackert, of St. Louis, Mo., and Drayton Heard, of Pittsburgh, Pa. (John W. Giesecke, of St. Louis, Mo., Heard & Heard, of Pittsburgh, Pa., and Ackert, Giesecke & Waugh, of St. Louis, Mo., on the brief), for appellant.

J. Garfield Houston, of Pittsburgh, Pa. (Blaxter, O'Neill & Houston, of Pittsburgh, Pa., on the brief), for Pittsburgh Hotels.

Thomas N. Griggs, of Pittsburgh, Pa. (Griggs, Moreland & Blair, of Pittsburgh, Pa., on the brief), for Fort Pitt Hotel, Inc.

Ella Graubart, of Pittsburgh, Pa. (James S. Crawford and Patterson, Crawford, Arensberg & Dunn, all of Pittsburgh, Pa., on the brief), for Peoples-Pittsburgh Trust Co.

Before MARIS, GOODRICH, and Mc-LAUGHLIN, Circuit Judges.

MARIS, Circuit Judge.

On and prior to May 1, 1940 Pittsburgh Hotels, Inc. owned three properties in Pittsburgh, the William Penn Hotel, the Fort Pitt Hotel and a service building.

These properties were all subject to the lien of a first mortgage then held by The Union Trust Company of Pittsburgh and later assigned to the Mutual Life Insurance Company of New York and to the lien of a second mortgage indenture dated January 1, 1937 given to the Peoples-Pittsburgh Trust Company as trustee to secure an authorized issue of $5,949,000 principal amount of Five Per Cent. Mortgage Cumulative Income Bonds of Pittsburgh Hotels, Inc.

On May 2, 1940 Pittsburgh Hotels, Inc. entered into an agreement to sell the Fort Pitt Hotel free and clear of all liens and encumbrances to Fort Pitt Hotel, Inc. The price agreed upon was $675,000 for the land and building and $150,000 for the equipment, furniture and furnishings. Fort Pitt Hotel, Inc., was to go into immediate possession of the hotel property and receive a bailment lease of the equipment, furniture and furnishings, was to pay Pittsburgh Hotels, Inc. $250,000 in cash in installments from May 2, 1940, to March 1, 1944, was to pay the taxes and insurance premiums, and was to make specified expenditures for the rehabilitation of the premises. Upon payment of the last of the cash installments aggregating $250,000 on March 1, 1944, Pittsburgh Hotels, Inc. was to convey the land and building to Fort Pitt Hotel, Inc., in fee simple free and clear of liens and encumbrances and give it a bill of sale for the equipment, furniture and furnishings. Simultaneously Fort Pitt Hotel, Inc., was to deliver to Pittsburgh Hotels, Inc. a purchase money bond and mortgage for $575,000 to mature March 1, 1954, and bear interest at 5% per annum payable quarterly.

On May 1, 1940, Pittsburgh Hotels, Inc. had requested Peoples-Pittsburgh Trust Company as trustee under the second mortgage indenture securing the Mortgage Cumulative Income Bonds, to release the Fort Pitt Hotel property from the lien of that indenture, the release to be held in escrow until compliance with Article V of the mortgage indenture. The request had been accompanied by two appraisals, one dated April 26, 1940, fixing the value of the land and building at $550,000 and another dated April 22, 1940, fixing it at $667,000. Pursuant to this request the trustee on May 2, 1940, executed and delivered to an escrow agent a release of the lien of the mortgage indenture and authorized the escrow agent to deliver the release

to Pittsburgh Hotels, Inc., on or before March 10, 1944, upon performance of the conditions stipulated in the escrow agreement.[1]  Pittsburgh Hotels, Inc. also arranged to secure from the first mortgagee the necessary release of the lien of the first mortgage.

By letter dated May 15, 1940, Pittsburgh Hotels, Inc. gave notice of the sale to the holders of all the bonds secured by the second mortgage indenture, among whom was the plaintiff.  On October 28, 1940, Pittsburgh Hotels, Inc. and Fort Pitt Hotel, Inc. entered into a supplemental agreement whereby Fort Pitt Hotel, Inc. was to pay to Pittsburgh Hotels, Inc., $50,000 of the $250,000 cash installments and was to pay $200,000 thereof to the trustee to be credited to the fund required to be paid for the release of the second mortgage lien under the indenture.[2]

Fort Pitt Hotel, Inc. took possession on May 2, 1940.  It paid each cash installment as it fell due.  It spent in excess of $300,000 in rehabilitation of the hotel.  It paid $115,000 in real estate taxes.  On March 1, 1944, Fort Pitt Hotel, Inc. informed Pittsburgh Hotels, Inc., that it was ready to complete performance.  On March 10, 1944 it tendered to Pittsburgh Hotels, Inc., the final installment of $10,000 and its purchase money bond and mortgage for $575,000 and demanded a conveyance of title free and clear of liens and encumbrances.

In the meantime on February 25, 1944, a suit had been instituted in the District Court for the Western District of Pennsylvania by the plaintiff who is the holder of $2,400 principal amount of the Mortgage Cumulative Income Bonds and of a voting trust certificate for 32 shares of the common stock of Pittsburgh Hotels, Inc.  The suit was brought on his own behalf and on behalf of all other holders of the bonds and voting trust certificates.  He named as defendants Pittsburgh Hotels, Inc., thirteen of its officers, directors and voting trustees and Peoples-Pittsburgh Trust Company, the trustee under the second mortgage indenture securing his bonds.  Fort Pitt Hotel, Inc., was not named as a defendant and the plaintiff sought no relief as to it.

The plaintiff alleged that Pittsburgh Hotels, Inc., in agreeing to sell the hotel and personal property upon the terms embodied in the agreement of sale and supplement and the trustee in agreeing to give the release upon the terms of the agreement of sale and supplement and in depositing it in escrow acted in violation of the terms of the indenture of mortgage.  He alleged that the holders of the Mortgage Cumulative Income Bonds of Pittsburgh Hotels, Inc., were thereby deprived of security to which they were entitled.  He asked that pending the determination of his cause of action against the defendants the court restrain Pittsburgh Hotels, Inc., from conveying title and the trustee from granting the release.

Because of the prayer in the complaint that Pittsburgh Hotels, Inc., be enjoined during the pendency of the action from conveying title to the hotel, its equipment, furniture and furnishings, that corporation refused the tender of Fort Pitt Hotel, Inc. On March 20, 1944, Fort Pitt Hotel, Inc., with leave of court, intervened in the plaintiff's suit and filed an answer and cross complaint.  In its cross complaint Fort Pitt Hotel, Inc., named Pittsburgh Hotels, Inc. and Peoples-Pittsburgh Trust Company, the trustee under the second mortgage indenture, as defendants and prayed for specific performance.  Pittsburgh Hotels, Inc., filed an answer to the cross complaint of Fort Pitt Hotel, Inc., and ex-

---

[1] The trustee also deposited in escrow pursuant to the same request an assignment of the lessee's interest in a lease of the equipment, furniture and furnishings of the Fort Pitt Hotel which had been given by Pittsburgh Hotels Equipment Company, a wholly owned subsidiary of Pittsburgh Hotels, Inc., as lessor and assigned by Pittsburgh Hotels, Inc. to the trustee as additional security under the second mortgage indenture.  The assignment thus deposited in escrow and subsequently delivered pursuant to the judgment of the district court raises no questions not involved in the release of the lien of the second mortgage and will, therefore, not be further referred to herein.

[2] The original agreement of May 2, 1940 provided for the payment of $100,000 to the first mortgagee, The Union Trust Company of Pittsburgh.  The supplemental agreement of October 28, 1940 deleted this provision and substituted the provision above described.  This was possible because the Mutual Life Insurance Company of New York, to which the first mortgage had been assigned, had waived the cash payment of $100,000 and agreed to release its lien upon the assignment to it as security of the purchase money mortgage to be given by Fort Pitt Hotel, Inc.

pressed its willingness to perform. The trustee submitted itself to the court. The plaintiff filed no pleading in response to the cross complaint.

Fort Pitt Hotel, Inc., thereupon moved for summary judgment pursuant to Civil Procedure Rule 56, 28 U.S.C.A. following section 723c. On November 8, 1944, the court entered a summary judgment against Pittsburgh Hotels, Inc., the trustee and the plaintiff and in favor of Fort Pitt Hotel, Inc., by which it ordered the trustee to release the lien of the mortgage upon the payment by Pittsburgh Hotels, Inc., to it of $50,000 in cash in addition to the sum of $200,000 already paid or provided for, and ordered Pittsburgh Hotels, Inc., to convey title to Fort Pitt Hotel, Inc., free and clear of all liens and encumbrances, and adjudged that the said title was not clouded by the plaintiff's action or by any rights of the plaintiff or of any persons in whose behalf his action was alleged to have been brought. It reserved for later trial all issues as to the liability of the original defendants to the plaintiff.

In compliance with the judgment Fort Pitt Hotel, Inc., paid the final installment of $10,000 to Pittsburgh Hotels, Inc., which in turn paid it to the trustee; Pittsburgh Hotels, Inc., paid to the trustee the $50,000 which it had originally retained under the terms of the supplemental agreement, thus making the payments to the trustee aggregate $250,000, and delivered to Fort Pitt Hotel, Inc., the deed for the hotel premises and the bill of sale for the personal property; the escrow agent for the trustee delivered the release of the lien of the second mortgage indenture to Pittsburgh Hotels, Inc.; Fort Pitt Hotel, Inc. delivered to Pittsburgh Hotels, Inc., its purchase money bond and mortgage for $575,000 and Pittsburgh Hotels, Inc., assigned the same to the first mortgagee as collateral security and made a second assignment thereof to the trustee; and the first mortgagee released the hotel property from the lien of the first mortgage. Although the judgment had been entered on November 8, 1944, and all the steps just described in compliance with its terms were not completed until December 29, 1944, the plaintiff did not apply for a supersedeas and did not take the appeal now before us until February 5, 1945.

Upon this appeal we are concerned solely with the question as to whether under the provisions of the mortgage indenture Pittsburgh Hotels, Inc., had the right to obtain a release of the lien of the mortgage under the circumstances here disclosed and whether the trustee had power to give it. If this question is answered in the affirmative it follows that the district court properly directed specific performance of the agreement. We are not called upon to determine on this appeal whether Pittsburgh Hotels, Inc., or its officers, directors or voting trustees, were improvident in selling the Fort Pitt Hotel property upon the terms embodied in the agreement of sale. This is one of the issues which the district court reserved for later trial and we express no opinion on it. We turn, therefore, to an examination of the terms of the mortgage indenture to determine whether the trustee was empowered to release the lien of the mortgage upon the conditions upon which the district court directed it to do so.

The conditions precedent to the giving of a release by the trustee are set forth in Article V of the indenture. Section 2 of that Article, so far as here material, provides:

" * * * as long as there is no default herein on the part of the Company and subject at all times to compliance on the part of the Company with the terms, covenants and conditions hereinafter set forth relative thereto, the Company is hereby granted and given the right to obtain the release and the Trustee is hereby authorized to release, from the lien of this indenture, a portion or portions of the mortgaged property conveyed under the terms of this indenture, subject, however, to and upon the following express terms and conditions, to wit:

\*     \*     \*     \*     \*     \*

"(b) The Trustee shall in no event be required or permitted to release any part or portion of the mortgaged property unless the same shall have been sold and the entire purchase price shall have been paid to the Trustee and unless such purchase price shall be not less than the amounts hereinafter in this Section 2 of this Article V more specifically provided.

\*     \*     \*     \*     \*     \*

"(d) * * * the Trustee is hereby expressly authorized to release from the lien of this indenture those specific portions of the properties hereinafter more specifically set forth, upon the payment to the Trustee of the proceeds of the sale thereof, which

proceeds shall be not less than the following amounts respectively:

\*   \*   \*   \*   \*   \*

"(2) For the release of the Fort Pitt Hotel property and the buildings situate thereon * * * the sum of One Million Dollars ($1,000,000) ; or such sum less than One Million Dollars ($1,000,000) but not less than the fair value of said property, as of a date not more than three months previous to the date of such request for release, determined in each of the written appraisals of two reputable persons, familiar with real estate values in the vicinity, selected by the Company and satisfactory to the Trustee; provided, however, that of the amounts above specified, there shall be paid to the Trustee * * * Two Hundred and Fifty-Thousand Dollars ($250,000) in the case of said Fort Pitt Hotel property * * * and the balance of said amounts by obligations secured by a first purchase money mortgage upon the property so being released, prior in lien to all liens and encumbrances except the lien of current taxes.

"(e) In the event that either of said properties shall be released upon payment of part cash and part mortgage as aforesaid, there shall be delivered to the Trustee, in addition to the cash consideration for such release:

"(1) The obligation or obligations secured by purchase money mortgage or mortgages for the balance of the release consideration, which obligation or obligations shall bear interest at a rate not less than the rate of the bonds secured by this indenture;"

The plaintiff alleges that the parties failed to comply with many of these provisions of the mortgage indenture and consequently that the trustee was not empowered to release the lien of the mortgage. He urges that the payment of but $200,000 to the trustee and the retention of $50,000 by Pittsburgh Hotels, Inc., was in direct violation of Article V, Section 2(d) (2), which provides that in the event of the sale of the Fort Pitt Hotel property there shall be paid to the trustee not less than $250,000 in cash. As has been pointed out, however, the judgment decreed specific performance by the trustee upon the condition that the full amount of $250,000 should first have been paid to it. At the time the release was delivered by the escrow agent to Pittsburgh Hotels, Inc., the trustee had in fact received the full sum of $250,000, as required by the mortgage indenture.

The plaintiff contends that since the court found it necessary, before ordering the trustee to release the mortgage lien, to direct Pittsburgh Hotels, Inc., to pay the trustee for the sinking fund the sum of $50,000 which it had retained, the decree for specific performance was for a contract not made by the parties. He calls attention to the well established principle that the court, in enforcing a contract, must restrict itself to the one made by the parties and may not change or modify it or make a new contract for them. The plaintiff, however, is not appealing from the direction in the judgment that Pittsburgh Hotels, Inc., pay the trustee an additional sum of $50,000 for the sinking fund. It is appealing from the judgment only insofar as it directs Pittsburgh Hotels, Inc., to convey a clear title and the trustee to release the lien of its mortgage upon payment by Pittsburgh Hotels, Inc., to it of $250,000 in cash, and delivery to it of a purchase money bond and mortgage of Fort Pitt Hotel, Inc., for $575,000.

The essential terms of the contract between the parties in this regard were that Fort Pitt Hotel, Inc. should pay Pittsburgh Hotels, Inc. $250,000 in cash and give it a purchase money bond and mortgage for $575,000 in consideration of which Pittsburgh Hotels, Inc. should deliver a deed and bill of sale to Fort Pitt Hotel, Inc. and procure from the trustee and deliver to Fort Pitt Hotel, Inc. a release of the lien of the second mortgage. It is true that the contract as supplemented did provide that $200,000 of the stipulated cash price should be paid by Fort Pitt Hotel, Inc. to the trustee to be credited to the fund required for the release of the mortgage and that the remaining $50,000 should be paid to Pittsburgh Hotels, Inc. But this was obviously done for the convenience of Pittsburgh Hotels, Inc. in its dealings with the trustee and it did not concern Fort Pitt Hotel, Inc. or condition the latter's right to a deed and release when it had performed its part of the contract. Moreover there was no stipulation in the contract that the sum of $50,000 thus paid to Pittsburgh Hotels, Inc. should not in turn be paid by it to the trustee as additional consideration for the release if required by the mortgage indenture. The fact is that the mortgage indenture—which was the contract between Pittsburgh Hotels, Inc. and the trustee—required a cash pay-

ment of at least $250,000 for the release of the mortgage lien. In directing the payment of the additional sum of $50,000 to the trustee the court was merely requiring that Pittsburgh Hotels, Inc., in performing its contract obligation to deliver a valid release to Fort Pitt Hotel, Inc., should comply with the terms of the mortgage indenture relating to such releases. This did not involve a modification either of the contract between Pittsburgh Hotels, Inc. and Fort Pitt Hotel, Inc. or of the mortgage indenture.

■ The plaintiff points to the agreement of sale between Pittsburgh Hotels, Inc. and Fort Pitt Hotel, Inc., to show that those parties agreed that $150,000 of the cash installments were to be allocated to the so-called lease of the equipment, furniture and furnishings and but $100,000 to the purchase of the land and building. Consequently, he contends, the trustee was in no position to give the release because Article V, Section 2(d) (2) of the indenture requires that there shall be paid to the trustee $250,000 which he asserts must be derived from the sale of the land and building. While this provision undoubtedly requires that the trustee must receive from Pittsburgh Hotels, Inc., at least $250,000 in cash before it may release the lien on the Fort Pitt Hotel property it does not in our opinion require that the particular dollars thus deposited shall have been received by Pittsburgh Hotels, Inc., from the purchaser as a part of the purchase price of the hotel property being released. So long as the entire proceeds of the sale of the property are in fact paid to the trustee, as they were here, the requirements of the indenture are satisfied.

The trustee points out that if the terms of the mortgage indenture were to be construed as urged by the plaintiff it would have been entitled to $250,000 in cash from the sale of the land and building and a purchase money mortgage for but $425,000, since the land and building were sold for $675,000. The fact is, however, that the trustee has received[3] a purchase money mortgage for $575,000 in addition to $250,-000 in cash, a total of $825,000. The result of the transaction from the bondholders' standpoint, therefore, is that their trustee has received not only the full proceeds of the sale of the land and building, to which under the mortgage indenture they were entitled, but also of the equipment, furniture and furnishings, to which under that instrument their only claim was as pledgee of the stock of Pittsburgh Hotels Equipment Company, which held title to it.[4] They cannot fairly complain of this result.

■ The plaintiff calls attention to the provision in Article V, Section 2(e) (1), that in the event the Fort Pitt Hotel property shall be released on payment of part cash and part mortgage there shall be delivered to the trustee in addition to the cash the purchase money obligation for the balance of the release consideration and that it shall bear interest at not less than the rate of the bonds secured by the indenture which is 5% per annum. He urges that this requires that the interest should begin to accrue from May 2, 1940, the date of the agreement of sale, and that a provision that interest on the unpaid balance of the purchase price should begin to accrue at some later date is not in compliance with the indenture. It was not contemplated, however, that the trustee should deliver the release to Pittsburgh Hotels, Inc., until delivery by Fort Pitt Hotel, Inc., of the purchase money mortgage. That was not to take place until March 1, 1944. Until that date the lien of the mortgage in-

[3] Article V, Section 4, of the indenture provides in part: "Notwithstanding anything in this Article V contained, any property which under the provisions hereof may be released from the lien of this indenture, and which is subject to any prior mortgage of the Company, shall be released by the Trustee hereunder upon payment of such proceeds being made to the Trustee, or Mortgagee of such prior mortgage, to the extent required by such prior mortgage, in lieu of the payment of such proceeds to the Trustee hereunder, the balance, if any, of such proceeds to be paid to the Trustee hereunder."

The purchase money mortgage for $575,-000 was in fact assigned by Pittsburgh Hotels, Inc. first to the Mutual Life Insurance Company of New York as first mortgagee and second (and subject to the prior assignment) to the trustee. Under Section 4 of Article V of the indenture the trustee must thereby be deemed to have received payment and delivery to it of the purchase money mortgage within the meaning of Sections 2 and 3 of Article V.

[4] The trustee acquired no title to or lien upon the equipment, furniture and furnishings by the assignment to it by Pittsburgh Hotels, Inc. under the mortgage indenture of the latter's interest as lessee in a lease thereof given by Pittsburgh Hotels Equipment Company as lessor.

denture on the Fort Pitt Hotel property for the benefit of the bondholders remained wholly unimpaired. The purchase money mortgage which the trustee received when the release of lien was delivered did carry interest from the date of release. This, we think, was full compliance with the provision of the mortgage indenture here involved. That instrument called for interest on the purchase money obligation to commence from the date of delivery of the release not from the date of passing of an equitable title under the contract of sale, as the plaintiff contends.

It may be, as the plaintiff contends, that it was improvident for Pittsburgh Hotels, Inc., to enter into the arrangement whereby Fort Pitt Hotel, Inc., was permitted to take immediate possession of the hotel and operate it before paying the full purchase price. On the other hand it may be, as Pittsburgh Hotels, Inc., argues, that such a course was quite advantageous because it made available capital provided by Fort Pitt Hotel, Inc., for the rehabilitation of the hotel which Pittsburgh Hotels, Inc., would otherwise have had to supply and thus divert from another and more profitable hotel. Those conflicting arguments may be presented upon the trial of the issues remaining between the plaintiff and the original defendants. They have no bearing upon the question involved in this appeal. The fact is, as we have seen, that the trustee was not called upon to release the lien of the mortgage indenture until the part of the consideration not paid in cash had been secured by the delivery of a purchase money mortgage and that simultaneously with the delivery of the release by the trustee it did receive a purchase money mortgage which bore interest.

■ What we have just said applies with equal force to the contention that Pittsburgh Hotels, Inc., and its officers, directors and voting trustees acted improvidently in authorizing and entering into an agreement of sale which deprived the bondholders of the earnings of the hotel for four years, turned the operation of the property over to Fort Pitt Hotel, Inc., without the payment of any rent or royalty and made no provision for the payment of interest on the unpaid purchase price in the interim. The somewhat similar argument that the trustee had no power to execute the release of the mortgage lien and place it in escrow in May 1940 for delivery in March 1944 is equally without merit. The release did not become a binding instrument until it was actually delivered after compliance by Pittsburgh Hotels, Inc., with the terms of the indenture and the decree of the district court. It was of no legal significance that instead of waiting to sign the release until the conditions of release had been performed the trustee, at the request of the parties, signed a release before those conditions had been met and put it in the hands of an escrow agent who delivered it after they had been complied with.

■ Article V, Section 2, of the indenture provides that the trustee may give the release only if Pittsburgh Hotels, Inc., is not in default. The plaintiff asserts that in March, 1944, there was unpaid cumulative interest on the bonds, that under such circumstances Pittsburgh Hotels, Inc. was prohibited by Article II, Section 14, of the indenture from purchasing any of its own junior securities, that it did purchase some of those junior securities in the years 1941 and 1942 and consequently was in default. It follows, he contends, that the trustee was prohibited from giving the release. It appears, however, that Pittsburgh Hotels, Inc., disposed of all these junior securities without loss by September, 1943. Consequently in December 1944 when the release was delivered to Pittsburgh Hotels, Inc., that corporation was not in default in performance of this covenant of the indenture.

■ The plaintiff interprets Article V, Section 2(d) (2), as requiring the determination of the fair value of the hotel property within three months of the consummated sale whereas the fair value was in fact established by appraisals made within three months of the date of the agreement of sale. The provision, however, is that the fair value must be "as of a date not more than three months previous to the date of such request for release." The request for release was made by Pittsburgh Hotels, Inc., on May 1, 1940, and the appraisals were made in the immediately preceding month of April 1940. There was thus a literal compliance with the requirement of the indenture in this respect.

■ Finally the plaintiff urges that the indenture requires that any part of the purchase price turned over to the holder of the first mortgage must be credited upon the amount due on the first mortgage whereas here the purchase money mortgage was admittedly assigned to the hold-

696

er of the first mortgage as collateral security. The result, according to the plaintiff, is that the first mortgagee has obtained additional security without the reduction of the debt. This argument is in our opinion entirely fallacious. The first mortgagee originally had a first lien on the Fort Pitt Hotel property as part of the security for its entire debt. It agreed to release this lien in consideration of the substitution as security of the purchase money mortgage to be given by Fort Pitt Hotel, Inc. Article V, Section 4, of the second mortgage indenture,[5] provides that its lien may be released by the trustee upon "payment" of the proceeds of the sale to the prior mortgagee to the extent required by the latter. Here the purchase money mortgage was assigned to the first mortgagee as collateral security as required by it. This assignment was a "payment" of the proceeds of the sale to the first mortgagee within the meaning of Article V, Section 4. When referring in Section 4 to the delivery of a purchase money mortgage to a prior mortgagee "payment" is clearly used in the same sense as it is used in subsections (d) and (e) of Section 2 in referring to the delivery of such a mortgage to the trustee. Section 3(b) of Article V expressly provides that any purchase money bond and mortgage delivered to the trustee under Section 2 shall be held by it "as a general pledge and security" for the bonds issued under the indenture. It follows that the delivery of the purchase money mortgage to the first mortgagee as security complied with Section 4 and in conjunction with the payment of $250,000 in cash to the trustee empowered the latter to give the release.

In view of our conclusion that the district court properly ordered the conveyance of title to Fort Pitt Hotel, Inc., free and clear of all encumbrances it becomes unnecessary to pass upon the contention made by the defendants that the plaintiff was guilty of laches both in the bringing of the action and in the filing of the appeal.

■ With one portion of the district court's judgment we do disagree. Paragraph VI adjudges, inter alia, that the sale agreement of May 2, 1940, and its supplement of October 28, 1940, "complies with the requirements of the said Indenture of Mortgage." All that the district court could properly have decided upon the documents before it was that the agreement of

sale and its supplement were valid and enforceable by Fort Pitt Hotel, Inc., to the extent that they required Pittsburgh Hotels, Inc., to convey title and procure a release of the lien of the mortgages upon compliance by Fort Pitt Hotel, Inc., with the terms of the contract. Whether the agreement and its supplement failed to comply with the mortgage indenture in other respects not involving the validity of the release of lien is a question which must be reserved for later determination upon the trial of the remaining issues raised in the original complaint.

The judgment of the district court is modified by striking out of paragraph VI thereof the words "and complies with the requirements of the said Indenture of Mortgage," and as thus modified is affirmed.

---

[5] Quoted in footnote 3, supra.