**GIESECKE v. PITTSBURGH HOTELS, Inc., et al.**

**Appeal of HEARD.**

**Appeal of ACKERT et al.**

**Nos. 9917, 9927.**

United States Court of Appeals Third Circuit.

Argued Oct. 11, 1949.

Decided Jan. 31, 1950.

Drayton Heard, Pittsburgh, Pa.

Harold C. Ackert, St. Louis, Mo.

J. Garfield Houston, Pittsburgh, Pa. (Blaxter, O'Neill & Houston, Pittsburgh, Pa., on the brief), for Pittsburgh Hotels and individual defendants-appellees.

Ella Graubart, Pittsburgh, Pa. (Patterson, Crawford, Arensberg & Dunn, Pittsburgh, Pa., on the brief), for appellee Peoples First Nat. Bank & Trust Co., Trustee.

Before McLAUGHLIN and KALODNER, Circuit Judges, and FEE, District Judge.

McLAUGHLIN, Circuit Judge.

These are appeals from an order of the District Court with respect to applications for fees and expenses by the plaintiff and his attorneys in a class action.

In 1942, appellant Giesecke, an attorney at law, as trustee of $2400 face value mortgage bonds of Pittsburgh Hotels, Inc., sued the latter, thirteen of its officers, directors and voting trustees and Peoples-Pittsburgh Trust Company, trustee under the second mortgage indenture securing the bonds. That action was dismissed as not comply-

ing with the conditions precedent to such a suit prescribed in article X, section 11, of the indenture. A new action, commenced on February 25, 1944,[1] sought to enjoin the sale by Pittsburgh Hotels, Inc. of the Fort Pitt Hotel to Fort Pitt Hotel, Inc. The latter filed a cross-complaint against Pittsburgh Hotels, Inc. and the second mortgage trustee and prayed for specific performance of the sales agreement. Pittsburgh Hotels, Inc. expressed its willingness to perform and the trustee submitted itself to the Court. Giesecke did not file any pleading to the cross-complaint. Fort Pitt Hotel, Inc. moved for summary judgment and judgment was entered November 8, 1944.[2] Plaintiff appealed on February 5, 1945. With a slight modification, we affirmed the judgment of the District Court on November 27, 1945.[3]

In November, 1947, Giesecke sold his bonds. Regarding this, his reply brief states that " * * * plaintiff trustee, in the exercise of his fiduciary duties, considered that the increased market value made a sale desirable and necessary * * *." On September 21, 1948, Giesecke filed a "Motion for Additional Payments into Sinking Fund" and a "Motion for Production of Documents for the Court's Inspection." These motions were denied because plaintiff, having disposed of his securities, no longer had the right to proceed with his suit. After that, on May 24, 1948, the defendants filed a motion for summary judgment. This was granted by the Court on January 28, 1949. Meanwhile, there had been a hearing on the Giesecke applications for counsel fees and expenses; and, on the same date, the Court also disposed of those applications. Giesecke's Pittsburgh counsel, Drayton Heard, Esq., was allowed $500. Giesecke was found "not entitled to be compensated for his own services and expenses." H. C. Ackert, Esq., St. Louis attorney for Giesecke, received nothing. The Court's order, D.C.1949, 82 F.Supp. 64, simply provided that "defendants pay the sum of Five Hundred ($500.00) Dollars to Drayton Heard, counsel for J. W. Giesecke, plaintiff."

Heard appeals from "the inadequacy of counsel fees" awarded him. Giesecke, who, as above noted, is an attorney at law, urges that he was improperly denied compensation for his own personal legal services and expenses. Ackert asserts that he was improperly denied an allowance for attorney fees and expenses.

The question of the value of the Giesecke services centers around the payment by Pittsburgh Hotels, Inc. of $50,000 to the trustees of the mortgage sinking fund. There were no other results from the Giesecke suits that can be said to come within the doctrine of having produced a fund for the bondholders.[4] All of the other allegations of the 1944 complaint which were litigated in the cross-complaint proceeding were decided adversely to plaintiff. The remaining charges of the complaint were never before the District Court on their merits. The agreement for the sale of the Fort Pitt Hotel provided for cash installment payments, totalling $250,000, to Pittsburgh Hotels, Inc. This, under article V of the indenture, was to be

1. A question of whether non-compliance with the terms of the indenture by this second suit was excused, was never resolved because of the prior disposal of the litigation on other grounds.

2. D.C., 57 F.Supp. 180.

3. 3 Cir., 152 F.2d 689.

4. We find no justification for the further suggestion advanced by appellants that the element of interest on the $50,000 should be considered in estimating the value of the services of the Giesecke attorneys. There was no mention of such interest in either complaint. There was no reference to it by Giesecke at the time of the summary judgment for specific performance. It was then, it will be remembered, that payment of the $50,000 to the trustee was decreed. The opinion, as above quoted, called simply for the payment of the principal sum. Giesecke did not object to this in the District Court nor on appeal. It was not until September 21, 1948, a year after he had put himself out of court by selling his bonds, that he attempted to urge that interest was collectable by his "Motion for Additional Payments into Sinking Fund." He took no appeal from the decision denying that motion.

paid the trustees prior to the release of the Fort Pitt Hotel from the indenture. Pittsburgh Hotels, Inc. paid $200,000 of the total and retained $50,000 as working capital. That fact was alleged by Giesecke in his suit and stressed by him at the hearing on the cross-complaint. Pittsburgh Hotels, Inc. advised the Court that it would pay the $50,000 on the order of the Court. Regarding this, the District Judge said in his opinion, D.C., 57 F.Supp. 180, 182, "As 'Pittsburgh' has expressed its readiness and willingness to pay the additional $50,000 at this time to the 'Indenture Trustee', we will decree that such payment be made."

By the time the question of the Giesecke fees was brought before the Court below, Judge Schoonmaker, who had heard the case originally, had died. There is no substance to appellants' argument that this reacted to their disadvantage. Judge Schoonmaker's opinion in the cross-complaint proceeding can hardly be said to ascribe any real importance to what appellant had accomplished by his suit. Judge Gibson, on the other hand, directly holds that "As a result of the plaintiff's efforts this court ordered the Pittsburgh Hotels, Inc. to pay the $50,000.00 which had been used as working capital, into the sinking fund as additional security for the bonds." That memorandum opinion continues, saying: "This comes within the doctrine that in a derivative class action the plaintiff is entitled to a reasonable allowance for counsel fees and expenses, when, through his efforts he has produced a fund for the benefit of the class. However, a considerable portion of the plaintiff's efforts were spent in the litigation of issues which were not germane to the recovery of the $50,000.00. Plaintiff is not entitled to be compensated for his own services and expenses, but the sum of Five Hundred ($500.00) Dollars will be allowed the plaintiff as a reasonable fee for his Pittsburgh counsel."

Appellees do not dispute the equitable doctrine pronounced by the Court. They make no affirmative argument against the general proposition asserted strenuously by appellants, that an attorney-at-law plaintiff acting as his own lawyer in a proper case, and within the discretion of the Court, can be compensated for his professional services.[5] Nor do we think that question is before us. As we read Judge Gibson's opinion on this point, all he meant to hold, and all he actually did hold, was that under the facts of this particular suit, he did not consider that he should allow Giesecke a fee or expenses.

The Giesecke action, while it had not produced a new fund for the bondholders or obtained money that would have been otherwise lost to them, did force immediate payment of the $50,000. The Court thought that service worth an allowance of $500 to Giesecke's Pittsburgh attorney, Mr. Heard. The Court's feeling, that the local lawyer, in making all of the court appearances, had borne the laboring oar, is implicit in the opinion. With this in mind, the refusal to grant the plaintiff personally a fee in a suit where his attorney was given an allowance for representing him is not arbitrary.

If we were evaluating Mr. Heard's services in the first instance, we would award him a larger sum than did the Trial Judge. However, we cannot say that the amount is so clearly insufficient as to justify our interference.[6]

The same reasoning which disposes of Giesecke's claim applies to appellant Ackert who is a member of the Missouri bar. During the period with which we are dealing, he was associated professionally with Giesecke, and they later became partners. He undoubtedly did some work in this litigation. He was not specially referred to in the Court's opinion, but no reason appears for assuming that he was overlooked. His claim had been duly presented. The District Judge was familiar with the reasons why he thought he should be compensated. In sharply restricting the fees allowed plaintiff to "a reasonable fee for his Pitts-

5. See Rogers v. Hill, D.C.S.D.N.Y., 34 F. Supp. 358; Jones v. Peabody, 182 Wash. 148, 45 P.2d 915.

6. Smith v. Morris, et al., 3 Cir. 69 F.2d 3, 5; United States v. Anglin and Stevenson, 10 Cir., 145 F.2d 622, 624, 630; Delno v. Market St. Ry. Co., 9 Cir., 124 F.2d 965, 967; Mercantile-Commerce Bank v. Southeast Arkansas Levee District, 8 Cir., 106 F.2d 966, 972–973.

burgh counsel", the Court, in effect, held that the facts did not permit a fee to a lawyer who had not personally appeared in the matter at all.

Having the three claims for fees and expenses before him, the District Judge obviously decided that the only allowance indicated by the facts was a reasonable fee to Pittsburgh counsel. This was within the Court's discretion. We cannot say that it was error.

The order of the District Court will be affirmed.