378 F.2d 620
 Samuel R. LEVINE, Appellant,
v.
Stanwood G. BRADLEE, Julius M. F. Conrad, E. M. Doty, Leslie C. Graham, R. V. H. Harned, J. Rucker McCarty, Daniel Van Dyk, and General Acceptance Corporation, (Appellee).
 No. 16072.
 United States Court of Appeals Third Circuit.
 Argued December 21, 1966.
 Decided May 24, 1967.
 
 Sidney B. Silverman, New York City (Richard B. Pearl, Philadelphia, Pa., on the brief), for appellant.
 Israel Packel, Philadelphia, Pa. (Marvin F. Hartung, New York City, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., Conboy, Hewitt, O'Brien & Boardman, New York City, on the brief), for appellee.
 Before BIGGS, HASTIE and SEITZ, Circuit Judges.
 OPINION OF THE COURT
 BIGGS, Circuit Judge.
 
 
 1
 The issue in this case is whether Samuel R. Levine, the plaintiff, may maintain a suit for his expenses and attorney's fees incurred in a stockholders' derivative suit without giving security for expenses.
 
 
 2
 F. R. Wills, Chairman of the Board and Chief Executive Officer of General Acceptance Corporation, GAC, a Pennsylvania corporation, was given an option by GAC to purchase 53,061, as adjusted, shares of its common stock at $12.98 a share. When Wills exercised the option and purchased the stock, he gave his personal promissory note in the amount of $600,000 not payable in full for five years and secured by 50,000 of the shares, received by him under the option, delivered to GAC. Wills retained the rights to receive all dividends declared on and to vote the stock pledged by him. The complaint alleged that GAC has paid dividends on the stock at the rate of $1.10 a share or approximately 8.5%, while the note bore interest at the rate of only 5%. Since the case was not heard on the merits we take the allegations of the complaint to be correct. It appears, therefore, that the dividends received by Wills have exceeded, probably by at least $28,000 a year, the amounts of interest due on his note.[1]
 
 
 3
 The plaintff, Levine, a holder of 106 shares of common stock of GAC, brought suit on February 3, 1965, in the court below naming as defendants Wills and the other directors of GAC and GAC itself. The complaint alleged both violations of the Securities Exchange Act of 1934, Section 10(b), 15 U.S.C.A. § 78j (b) and Rule 10(b) (5) of the Rules of the SEC. Jurisdiction in this part of Levine's suit is based upon federal law. The second portion of the suit is based on diversity jurisdiction bottomed on Article 16, Section 7 of the Pennsylvania Constitution, P.S., and 15 P.S. § 2852-603, subd. A of the laws of Pennsylvania.
 
 
 4
 On March 8, 1965, Wills and several of the other directors filed a motion for security for costs pursuant to Rule 35(a) of the United States District Court for the Eastern District of Pennsylvania and GAC filed a motion for security for expenses pursuant to 15 P.S. § 2852-516, subd. B. In Judge Grim's opinion in the court below, D.C., 248 F.Supp. 395, he set out Levine's causes of action, federal and state, and held that the defendants were not entitled to security for expenses under the statute for the federal cause of action, McClure v. Borne Chemical Co., 292 F.2d 824 (3 Cir. 1961), but that as to that part of the suit based on the Pennsylvania Constitution and laws applicable to stockholders' derivative suits, security for expenses should be required of Levine. Judge Grim, however, concluded that he had nothing before him to indicate what the defendants' reasonable expenses in the suit might be, including attorney's fees, and that, therefore, he could not set any bond pursuant to 15 P.S. § 2852-516, subd. B. Judge Grim, however, directed that a cost bond, as distinguished from a bond for expenses, in the sum of $600 be filed under Rule 35(a) of the rules of the court below.[2] On December 20, 1965, Levine filed the required bond for costs. On December 14, 1965, Levine's counsel had moved for an order dismissing the action on the ground that it had become moot because, without notifying the plaintiff or the court, Wills had prepaid his note on or about May 18, 1965. Levine's counsel nevertheless expressly reserved the issue of attorney's fees.
 
 
 5
 On June 8, 1966, Judge Luongo[3] proceeded to dismiss the complaint as to the individual defendants on the ground that it was moot. The suit against GAC remained. Thereafter, on June 13, 1965, Judge Luongo ordered Levine to post a bond in the sum of $3,500, granting leave in the same order to GAC to apply for an increase in the amount if warranted by circumstances, if Levine pursued his application for counsel fees under the cause of action based on the Pennsylvania statute. The court further ordered that all proceedings should be stayed until the $3,500 bond was posted. This is to be contrasted with the position of Judge Grim who in his opinion held, relying upon our opinion in McClure, that no security for expenses but only security for costs could be granted under the federal action. This is true whether or not Levine's claim for fees and expenses be treated as "integrally related" or not "integrally related" to his cause of action and whether it is or is not a "reserved issue" in his suit against the directors under the Securities Exchange Act of 1934. This, of course, means that Levine can proceed on his claim for counsel fees under the federal law without giving bond and we so hold. So much for that portion of Levine's claim for counsel fees based on the federal law. We now turn to the issues under the Pennsylvania Constitution and statutes.
 
 
 6
 Levine asserts that his claim for reimbursement of expenses and attorney's fees is a direct action against the corporation, one without the ambit of the Pennsylvania statute, and that no security may properly be demanded. The issue is whether a claim for attorney's fees, assuming it to be valid, arising from a derivative cause of action, is within the purview of the Pennsylvania Security for Expenses statute, 15 P.S. § 2852-516, subd. B, which provides that, "In any such [secondary] suit instituted * * * by a holder * * * of less than five per centum of the outstanding shares of any class of such corporation * * * unless the shares * * * held by such holder * * * have a fair market value in excess of fifty thousand dollars ($50,000), the corporation in whose right such action is brought shall be entitled at any stage of the proceedings, to require the plaintiff * * * to give security for the reasonable expenses, including attorneys' fees * * *."
 
 
 7
 The obligation to reimburse a shareholder who brings a successful derivative suit is an obligation of the corporation. In 1881 the United States Supreme Court decided Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157, stating, "[W]here one of many parties having a common interest in a trust fund, at his own expense takes proper proceedings to save it from destruction and restore it to the purposes of the trust, he is entitled to reimbursement, either out of the fund itself, or by proportional contribution from those who accept the benefit of his efforts." Id. at 532-533. The rationale of Trustees v. Greenough is that where a party (1) in effect represented a class with a common interest in a fund, i. e., became a trustee eo nomine for the fund; and (2) in fact succeeded in creating or preserving a fund for the benefit of that class, the fund thus created became obligated to reimburse the trustee eo nomine just as it would have been obligated to reimburse an actual trustee. See Hornstein, The Counsel Fee in Stockholder's Derivative Suits, 39 Colum.L.Rev. 784 (1939). The principle of Trustees v. Greenough took firm judicial root. Thus in 1894, the Pennsylvania Supreme Court could say in Weed's Estate, 163 Pa. 600, 30 A. 272, "[I]t would be an affectation of research to cite the long line of cases, English and American, which recognize and enforce [the principle of Trustees v. Greenough]. * * *"
 
 
 8
 Later opinions applied substantially the same basic theory to creditors' suits. The "litigating" creditor was designated as trustee eo nomine and the funds he made available to other creditors the corporation became obligated to reimburse him expenses. Miller v. Myers, 300 Pa. 192, 204-205, 150 A. 588 (1931). Adopting this theory, this court in Giesecke v. Pittsburgh Hotels, Inc., 180 F.2d 65 (1949), allowed attorneys' fees to a successful stockholder in a derivative action, but only as to that part of the suit which was successful. Counsel fees, however, were allowed directly against the corporation and not against the fund created by the suit, since the corporation as real plaintiff received the recovery. See Holthusen v. Edward G. Budd Mfg. Co., 55 F.Supp. 945 (D.C. E.D.Pa.1944), where the court allowed a fee to the attorney for a stockholder who succeeded in restraining waste of corporate property. The preservation of corporate property was treated for the purpose of the allowance of a fee as the equivalent of the creation of a fund. But we can perceive no difference in substance between a payment of attorney's fees from a fund created by a stockholder's derivative suit and a payment from corporate funds where benefit has been conferred upon the corporation by a stockholder's suit.
 
 
 9
 Although the obligation to pay attorney's fees is that of the corporation, it has been argued that a claim for attorney's fees after an out-of-court or court-approved settlement of a derivative suit is but a "reserved issue" of the derivative suit. It has been considered by some authorities to be so integrally related to the original derivative suit as to be simply an issue in it. Support for this conclusion is found in the fact that the success of the derivative claim determines the success of the claim for attorney's fees. If the case is actually tried, an actual adjudication on the merits will be entered. If, on the other hand, the case is settled, a decision on the "meritorious" quality of the derivative claim must be reached.
 
 
 10
 What is the status of Levine's claim for attorney's fees under the Pennsylvania statute? Although the language of the Pennsylvania statute clearly is limited to "secondary" actions proponents of the theory that the right to counsel fees is a reserved issue claim the policy of security-for-expenses statutes militates against a holding that a claim for attorney's fees is technically a direct action. What then is the policy of the Pennsylvania statute? As was clearly demonstrated in McClure, supra, the statute was designed to eliminate "strike" suits. The legislature decided to measure the seriousness of a derivative suit by the size of the stockholdings of the shareholder bringing the suit. If he owns more than 5% or $50,000 of the corporate stock, his claim is presumed not to be frivolous and no security is demanded.
 
 
 11
 As was said in Shapiro v. Magaziner, 418 Pa. 278, 284-285, 210 A.2d 890, 894-895 (1965): "The purpose of Section 516B and its precursors is to prevent `strike suits' — shareholder derivative actions begun `with the hope of winning large attorney's fees or private settlements, and with no intention of benefiting the corporation on behalf of which suit is theoretically brought.' Security For Expenses Legislation — Summary, Analysis, and Critique, 52 Colum.L.Rev. 267 (1952). See also Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 547-549, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). It was thought that such `strike suits' were usually brought by shareholders with only a small financial stake in the corporation and who, therefore, had little to lose by starting an action. However, it also was recognized, as Mr. Justice Jackson observed in Cohen v. Beneficial Industrial Loan Corp., supra, at p. 548, 69 S.Ct. at p. 1226, that the shareholder's derivative suit is a `remedy born of stockholder helplessness * * * long the chief regulator of corporate management and has afforded no small incentive to avoid at least grosser forms of betrayal of stockholders' interests.' Consistent with this background, the New York `security for expenses' legislation, followed by Pennsylvania and now embodied in Section 516B, was not intended to discourage derivative actions generally, a result which would follow if appellees were to prevail, but only to prevent `abuses attending the maintenance of such actions by persons whose financial stake in the corporation is slight.' Isensee v. Long Island Motion Picture Co., 184 Misc. 625, 54 N.Y.S.2d 556, 559 (1945)." In Isensee it was stated that the legislation was aimed at the abuses of strike suitors in cases in which a settlement is reached out of court for the strike suit motives of the complaint make it unlikely that the action will be carried to a conclusion. Further, as Ballantine defines "strike suitors" the term includes both speculators in attorney's fees and persons seeking private settlements. Ballantine, Corporations, 356 (Revised Ed.). Such a policy would urge one in the absence of contrary factors to characterize claims for attorney's fees arising out of derivative suits as part of the derivative suit and thus included in the statute. But it is inexorably apparent that the language of the statute explicitly excludes any suits other than secondary actions against officers, directors and former officers and directors. Policy arguments of what might be must fall before the articulated mandate of the legislature. If a claim for attorney's fees is not a reserved issue of the derivative suit but rather a direct and separate action based on quantum meruit it is not within the statute.
 
 
 12
 Let us then examine further the characteristics of a suit for attorney's fees. First, while in the derivative suit the corporation is plaintiff, albeit an unwilling one, Koster v. Lumbermen's Mutual Cas. Co., 330 U.S. 518, 67 S.Ct. 28, 91 L.Ed. 1067 (1947), in a claim for attorney's fees the corporation is the real defendant for its interests no longer coincide with those of the shareholder-plaintiff since the plaintiff seeks to acquire funds which the corporation seeks to retain. Second, while in a derivative suit the plaintiff-shareholder is suing for restitution of corporate property in his capacity as shareholder, when suing for attorney's fees, the plaintiff-shareholder seeks reimbursement of personal funds by the use of which the corporation has already secured restitution of corporate property. Third, no benefit can possibly accrue to the corporation from the shareholder's suit for attorney's fees for the corporation will not be receiving or retaining corporate property but rather disbursing corporate funds to the attorney.
 
 
 13
 A helpful principle for the case at bar lies in a stockholder's suit to compel the payment of dividends. There, as here, the shareholder asks that funds from the corporation be paid to him. In Knapp v. Bankers Securities Corporation, 230 F.2d 717 (3 Cir. 1956), Judge Maris concluded that a suit to compel dividends is a direct rather than a derivative suit. The main trust of Judge Maris' opinion is that the shareholder rather than the corporation is the injured party and "will be benefited if the action is brought to a successful conclusion." Id. at 721. As Judge Maris posed the problem, "the question then is whether in such an action [an action to compel the declaration of dividends] the shareholder is seeking relief from a personal wrong done to him and thus is enforcing a primary or personal right of his own or is seeking to redress a wrong done to the corporation and this is endorsing a secondary right derived from the corporation." Id. at 720. Once Judge Maris had determined that it was the shareholder who would benefit he felt compelled to conclude that the shareholder and not the corporation was the injured or wronged party. Measuring the elements of the instant case against this standard it seems necessary to conclude that a claim for attorney's fees is indeed a direct action for which no security for expenses may be demanded.
 
 
 14
 We must further point out that whether or not a claim for attorney's fees arising from a derivative action technically is or is not a derivative action, it is undoubtedly an action against and an obligation imposed on the corporation, not the corporate officials against whom the derivative suit was brought, and therefore not within the language of the statute. Subsection B of Section 2852-516 defines the suits in which security for expenses may be granted as "any such suit". The "such" refers to Subsection A of Section 516, viz., "In any suit brought to enforce a secondary right on the part of one or more shareholders against any officer, or director, or former officer or director of a corporation, * * *." (Emphasis added.) Nowhere does the statute designate a suit against a corporation in its definition of suits in which security for expenses may be granted. Since in the case at bar Judge Luongo has dismissed the action against the individual defendants, there remains no suit "against any officer, or director, or former officer or director" of GAC in which security for expenses may be granted. The suit against the corporation remains, however, and we must conclude that no security for expenses may be imposed on Levine in the state action.
 
 
 15
 We leave to the determination of the court below whether or not Levine's suit was relevant to Wills' prepayment of his note, i. e., whether there was a causal connection between the two incidents: in short whether Levine's claim is valid. This is for the court below to decide upon an adequate record with appropriate findings of fact and conclusions of law.
 
 
 16
 The court below will be directed to vacate its stay order and permit Levine to proceed on both his federal and his state causes of action for attorney's fees without security for expenses. The judgment will be vacated and the case remanded for further action not inconsistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 This statement does not take into consideration the tax benefits received from the deductibility of the interest
 
 
 [2]
 Rule 35(a) states: "(a) In every action in which the plaintiff was not a resident of the Eastern District of Pennsylvania at the time suit was brought, or, having been so afterwards removed from this District, an order for security for costs may be entered, upon application therefor within a reasonable time and upon notice. In default of the entry of such security at the time fixed by the Court, judgment of dismissal shall be entered on motion."
 It is admitted that the plaintiff was resident in New York at the time of the suit.
 
 
 [3]
 Judge Grim had died in the interim
 
 
 SEITZ, Circuit Judge (dissenting):
 
 17
 Initially, I agree with the majority that we do not have before us any issue as to the right to require security for expenses with respect to the federal cause of action. That issue was decided in plaintiff's favor by Judge Grim's opinion and order of November 17, 1965. This appeal is solely from Judge Luongo's order of June 13, 1966 which dealt only with security in connection with the state cause of action.
 
 
 18
 The majority opinion decides that a plaintiff's claim for attorney's fees, arising from a secondary action, is a direct and separate action against the corporation based on quantum meruit. From this premise they conclude that it is not within the purview of the Pennsylvania Security for Expenses statute because that statute applies solely to secondary actions.
 
 
 19
 As I see it, the question here is not whether under Pennsylvania law this plaintiff's claim for an attorney's fee would be characterized as "a direct and separate action based on quantum meruit" rather than "a reserved issue of the derivative suit". Instead, I think the issue is whether such a fee claim when asserted in a secondary action is subject to the operation of the Pennsylvania security statute.
 
 
 20
 When this motion for security was first filed by GAC the secondary action was admittedly pending. At that time both GAC and certain of the individual defendants had appeared by counsel. Obviously at that point GAC had incurred attorneys' fees and the appearing individual defendants had incurred attorneys' fees for which GAC might become liable under the Indemnification Statute. Thus, when this motion was filed and first considered the Pennsylvania statute, properly invoked by the corporation, required the filing by Levine of appropriate security. Indeed, Judge Grim so recognized. His only reason for not immediately fixing the amount of security was that the record was insufficient for that purpose. In fact, his order directed discovery to that end. However, before the matter came on for consideration Judge Grim died. Thereafter, plaintiff filed a motion to dismiss the action and to award costs and attorneys' fees against GAC. This motion and GAC's previously-filed motion for security were argued before Judge Luongo. He first entered an order dismissing the action against the individual defendants as moot and a few days later entered the order for security now on appeal.
 
 
 21
 Certainly the dismissal of the derivative claims for mootness did not relieve GAC of the expenses of defending the action. Yet these are the very expenses embraced within the Pennsylvania security statute. If, therefore, the right to security did not survive the dismissal of the suit as to the individual defendants it is clear that the purpose and policy of the statute would be frustrated at least as to the period when the secondary action was admittedly extant. I believe the statute was applicable and did not become inapplicable because of the later "mootness" development.
 
 
 22
 My second reason for believing that the district court properly applied the Pennsylvania statute is found in the language of Paragraph B itself. It recites in pertinent part:
 
 
 23
 "In any such suit instituted or maintained by a holder [of stock or trust certificates] * * *, the corporation in whose right such action is brought shall be entitled at any stage of the proceedings, to require the plaintiff or plaintiffs to give security for the reasonable expenses, including attorneys' fees, which may be incurred by it in connection with such suit, and by the other parties defendant in connection therewith, for which it may become liable pursuant to subsection C of this section 516 [indemnification of parties defendant], to which security the corporation shall have recourse in such amount as the court having jurisdiction shall determine upon the termination of such action."
 
 
 24
 This statute applies only to secondary or derivative actions. Reifsnyder v. Pittsburgh Outdoor Advertising Co., 405 Pa. 142, 173 A.2d 319 (1961); Knapp v. Bankers Securities Corp., 230 F.2d 717 (3rd Cir. 1956). And as noted the majority agree with the plaintiff that once the action was dismissed against the "real" defendants there was left only a direct and not a secondary action, thus rendering the security statute inapplicable by its terms. I agree that a plaintiff's right to reimbursement for counsel fees based on a benefit conferred on "his" corporation in a derivative action creates a claim against such corporation. But it does not follow that because the security statute is applicable only to secondary actions that it has no application to the fee claim asserted therein. Indeed, I think the statutory language calls for the opposite conclusion.
 
 
 25
 Paragraph B recites that the security issue may be raised "at any stage of the proceedings". To suggest that "proceedings" does not embrace the attorney fee aspect of the litigation is to circumscribe the statutory purpose unduly. This is so because an explicit purpose of the statute is to provide the corporation with security for legal fees incurred by it directly. These expenses necessarily continue into the fee application phase, particularly when a plaintiff's claim is contested. Thus, they are part of the "proceedings". To exclude the statute from the fee phase of the proceedings frustrates in part the statutory objective.
 
 
 26
 Finally, there are policy considerations which dictate a construction of the statute which renders it applicable here. The corporation will incur substantial legal services in litigating plaintiff's claim for fees. Indeed, these hearings could well constitute the equivalent of what would have been the trial on the merits. This is so because plaintiff, under one theory of recovery, must in effect prove that he filed meritorious claims. While there is no Pennsylvania authority on this point, it has been recognized elsewhere. Compare Rosenthal v. Burry Biscuit Corp., Del.Ch., 209 A.2d 459 (1949); Mintz v. Bohen, Del.Ch., 210 A. 2d 569 (1965); Dann v. Chrysler Corp., Del.Ch., 215 A.2d 709 (1965) affirmed, Chrysler Corp. v. Dann, Del.Ch., 223 A. 2d 384 (1966). The corporate expenses incurred in trying plaintiff's claim for fees in this context are of the very types which the statute was designed to cover.
 
 
 27
 Furthermore, the purpose of the statute is to prevent "strike" suits. Shapiro v. Magaziner, 418 Pa. 278, 210 A.2d 890 (1965). The threat of a hearing amounting to a trial on the merits to see whether plaintiff conferred a "benefit" for fee purposes can create the same possibilities of abuse as are involved in the filing of a strike suit. Thus, the policy considerations behind the passage of the security statute also support the conclusion that "proceedings" as used in this statute applies to all facets of a secondary action from commencement to conclusion, including hearings on the right of plaintiffs to recover attorneys' fees based on asserted benefits arising out of the secondary action.
 
 
 28
 I conclude that the Pennsylvania statute remained applicable to this case after the dismissal of the claim against the real defendants as moot. I therefore conclude that the trial court committed no error in applying it. No question is raised as to how he applied it in this case. I would affirm the district court's judgment insofar as it stayed further proceedings on the state cause of action until the entry of security.