**ROTHENBERG v. H. ROTHSTEIN & SONS.**

No. 9965.

United States Court of Appeals Third Circuit.

Resubmitted April 20, 1950.

Decided July 21, 1950.

See also, 181 F.2d 345.

Shapiro, Conner, Rosenfeld & Stalberg, Philadelphia, Pa., on the brief, for appellant.

Milton H. Friedman, Buffalo, N. Y., Harry W. Kurtzman, Philadelphia, Pa., on the brief, for appellee.

Before BIGGS, Chief Judge, and MARIS, GOODRICH, McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.

MARIS, Circuit Judge.

This is an appeal from a judgment of the District Court for the Eastern District of Pennsylvania. The proceeding in the district court was in the nature of an appeal from a reparation order made by the Secretary of Agriculture under the federal Perishable Agricultural Commodities Act, 1930.[1] A previous opinion of this court in this case, 1950, 181 F.2d 345, fully sets out the facts and they need not be repeated here. Suffice it to say that the basic question involved is whether by virtue of § 4 of the Uniform Sales Act in force in Pennsylvania,[2] which incorporates the Stat-

---

1. 7 U.S.C.A. § 499a et seq.

2. 69 P.S.Pa. § 42, which provides in pertinent part:

"First. A contract to sell or a sale of any goods or choses in action of the value of five hundred dollars or upwards

ute of Frauds relating to the sale of goods, the contract of sale involved in this case was wholly void and, therefore, incapable of supporting the recovery of reparation which the Secretary of Agriculture and the district court awarded to the appellee by reason of the appellants' rejection of the carload of peas which was the subject matter of the contract. We pointed this out in our previous opinion and directed reargument particularly with respect to the effect of the Pennsylvania statute. The case having been resubmitted we now proceed to consider the question posed.

We first must examine the nature and scope of the federal Perishable Agricultural Commodities Act. This act was passed by Congress in the exercise of its power under the commerce clause to facilitate the free flow of perishable agricultural commodities in interstate commerce by regulating that commerce through the licensing of commission merchants, dealers and brokers engaged in it and the prohibiting of various kinds of unfair conduct which in the past had proved to be productive of serious disputes and difficulties obstructive to the free flow of these essential commodities. Section 15 of the federal Act [3] authorizes the Secretary of Agriculture to make such rules and regulations as may be necessary to carry out its provisions. Pursuant to this power the Secretary has issued regulations which cover many phases of the activities of those engaged in this commerce. But though the act and regulations lay down a great many rules governing the purchase and sale of perishable agricultural commodities in interstate commerce it seems clear that Congress did not intend them to be all inclusive and to exclude from this field the operation of such rules of state law as can be applied consistently with the express mandates of the federal act. Thus § 15 provides that it "shall not abrogate nor nullify any other statute, whether State or Federal, dealing with the same subjects as this Act; but it is intended that all such statutes shall remain in full force and effect except in so far only as they are inconsistent herewith or repugnant hereto." In consonance with this view it has been held that the act "was not intended to repeal the law of sales or to destroy the rights and liabilities of the contracting parties thereunder".[4]

It follows, therefore, that while the validity of contracts to sell perishable agricultural commodities in interstate commerce is to be determined by the federal act and the regulations issued under it to the extent that they are applicable, the law of the state the rules of which would be applicable under the conflict of laws continues to be applicable to the determination of the question of validity to the extent that the federal act and regulations do not provide a rule for its solution. Applying this general proposition to the present case we search the federal act and regulations in vain for any rule with respect to whether or not a contract to sell perishable agricultural commodities must be in writing. Therefore, since the federal act has not brought this particular subject under federal regulation the statutes of frauds of the various states remain applicable to such contracts. This appears to be the view taken by the Secretary of Agriculture [5]

shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf."

3. 7 U.S.C.A. § 499o.

4. LeRoy Dyal Co. v. Allen, 4 Cir., 1947, 161 F.2d 152, 157. See also Ernest E. Fadler Co. v. Hesser, 10 Cir., 1948, 166 F.2d 904, 906.

5. The Secretary of Agriculture in his departmental interpretation and construction of the Perishable Agricultural Commodities Act which accompanies the regulations for its enforcement states:

"It is important that the essential terms of sale be stated in writing in order to meet the requirements of the statute of frauds. This may be done (a) by a confirmation of sale

and we think it is inescapable in the light of the silence of the federal act and regulations upon the subject.

■ Accordingly if the applicable state statute of frauds has the substantive effect of rendering a parol contract wholly void it would have the same effect upon a contract to which it was applicable under conflict of laws principles to sell perishable agricultural commodities in interstate commerce. The necessary result in such a case would be that rejection by the buyer of commodities purchased under the void contract would not be a case of unfair conduct under the federal act or give a right on the part of the seller for reparation therefore under the act.

■ This brings us to the consideration of the principal question presented for decision, namely, whether § 4 of the Uniform Sales Act, the Pennsylvania Statute of Frauds here involved, has in that state substantive or procedural effect. In Continental Collieries v. Shober, 3 Cir., 1942, 130 F.2d 631, this court gave careful consideration to this precise question. In our opinion in that case Judge Jones discussed and reconciled the Pennsylvania authorities and reached the conclusion that the Pennsylvania act is regarded as procedural in the sense that it denies a remedy in the Pennsylvania courts for the enforcement of such contracts but does not have the effect of rendering them void for all purposes. Our further consideration of the Pennsylvania authorities upon this question does not convince us that we should depart from the conclusion reached in Con-

tinental Collieries v. Shober. On the contrary we find further confirmation by the Pennsylvania Supreme Court of the conclusion there reached. Thus in Franklin Sugar Refining Co. v. Lykens Mercantile Co., 1922, 274 Pa. 206, 209, 117 A. 780, 781, Justice Simpson said: "It is averred the contract was not valid, but the Sales Act does not say oral agreements are not valid, but only (by section 4) that, if involving—'Five hundred dollars or upwards [they] shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually received the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf.'"

And in Franklin Sugar Refining Co. v. John, 1924, 279 Pa. 104, 109, 123 A. 685, 686-687, Justice Sadler, quoting Professor Williston with approval, said: "'As the purpose of the statute is to require a formality of proof in order to make a contract enforceable, not to impose a new rule of law as to what constitutes a valid contract, it is immaterial with what purpose [or in what way, so long as it is signed] the requirement of the statute is fulfilled.' 1 Williston on Contracts, 1114."

■ Since § 4 of the Uniform Sales Act in force in Pennsylvania does not render void Pennsylvania contracts which violate its terms but merely denies enforcement of such contracts in the Pennsylvania courts it follows that the contract between the ap-

signed by the purchaser and by the vendor or his authorized agent, usually a broker, or by a memorandum of sale signed only by the broker or other authorized agent on behalf of the purchaser, (b) by correspondence which identifies the produce and states the terms of sales, or (c) by telegrams provided the produce is identified and the essential terms of sale are covered. Unless the terms of sale are fully stated in writing, aggrieved parties may find that they not only are not in a position to avail themselves of the benefits of this act in obtaining reparation but that they have left the Ad-

ministration without the necessary evidence to bring successful disciplinary action against the offender.

"The original seventeenth section of the statute of frauds, which is the law in most States, generally as part of the Uniform Sales Act, also provides that such statute may be complied with where 'the buyer shall accept part of the goods so sold, and actually receive the same, or give something in earnest to bind the bargain, or in part payment.' As the written contract is usually more susceptible to proof than the other provisions above quoted, it is desirable to have a signed contract."

pellants and the appellee which is the subject of the present litigation was not void under that statute.

The remaining question is whether, nonetheless, § 4 of the Pennsylvania act operates in this proceeding to deny a remedy to the appellee for the appellants' rejection of the carload of peas in breach of that contract. As we pointed out in our prior opinion, the rule of Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, 114 A.L.R. 1487, is not applicable to this proceeding since it was not brought under the diversity of citizenship jurisdiction but under § 5 of the federal act which gives a federal right to the person injured to recover the damages sustained by reason of the violation of the act. The district court was, therefore, not "only another court of the State" [6] and as such required to enforce state statutes, such as § 4 of the Uniform Sales Act of Pennsylvania, which operate to deny a remedy in a particular type of case in the state courts.[7]

■■ Accordingly the procedural limitation upon suit laid down by § 4 of the Pennsylvania statute is not applicable in the present case by virtue of its own force but only if the federal act has adopted it as a limitation upon the remedy granted by that act. We find nothing in the federal act which would suggest that the remedy conferred by § 5 upon an injured party to a contract of sale of perishable agricultural commodities shall not be available if under the laws of the particular state which is involved a suit on the contract could not have been maintained in the state courts. On the contrary it is apparent that the federal act intends to grant a new remedy which is not dependent upon but in addition to such other remedies as may be available to the parties at common law or by the statutes of any state.[8] Indeed subsection (b) of § 5 expressly so provides, as follows: "Such liability may be enforced either (1) by complaint to the Secretary as hereinafter provided, or (2) by suit in any court of competent jurisdiction; but this section shall not in any way abridge or alter the remedies now existing at common law or by statute, and the provisions of this Act are in addition to such remedies."[9]

■ It has been suggested that the term "remedies" as used in § 5(b) is not limited to rights of a procedural nature but includes also substantive rights. We see no merit in this suggestion. "Remedy" has been defined as the means employed to enforce a right or redress an injury.[10] That this is the meaning of the term as used in § 5(b) is attested by the fact that the subsection is devoted to the matter of enforcement of the right of an injured person to damages for violation of the act. Accordingly the reference to "remedies now existing at common law or by statute" must refer to existing procedure in the state courts, and in the federal courts under their diversity jurisdiction, for the enforcement of any right to damages which may arise under the state law [11] out of the conduct which has given rise to liability under § 5(a) of the federal act. Whether such a state remedy actually exists in any particular case is not a matter with which the federal act concerns itself. It merely

6. Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079, 160 A.L.R. 1231.

7. Holmberg v. Armbrecht, 1946, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743, 162 A.L.R. 719. Compare Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 108, 65 S.Ct. 1464, 89 L. Ed. 2079, 160 A.L.R. 1231; Angel v. Bullington, 1946, 330 U.S. 183, 191–192, 67 S.Ct. 657, 91 L.Ed. 832; Cohen v. Beneficial Loan Corp., 1949, 337 U.S. 541, 555, 69 S.Ct. 1221, 93 L.Ed. 1528.

8. Krueger v. Acme Fruit Co., 5 Cir., 1935, 75 F.2d 67, 68.

9. 7 U.S.C.A. § 499e.

10. 2 Bouvier's Law Dictionary Rawle's Third Revision, page 2870.

11. Since § 5(b) of the federal act itself gives the alternative right to sue on the federal cause of action in any court of competent jurisdiction, federal or state, the reference to common law and statutory remedies in the saving clause of the subsection must refer to remedies for the enforcement of other causes of action, created by state rather than the federal law, growing out of the same conduct.

seeks to make clear that such remedy if it exists shall not be disturbed by the fact that a new and additional remedy has been provided by the act.

We conclude that in the reparation proceeding before the Secretary of Agriculture from which the appeal to the court below was taken § 4 of the Uniform Sales Act of Pennsylvania was not applicable either to invalidate the contract between the parties out of which the controversy arose or to deny the appellee the right to file his complaint with the Secretary and to secure a reparation order. The proceeding in the district court, although a trial de novo, was nonetheless basically an appeal from the order of the Secretary and, therefore, necessarily involved the same issues to be determined under the same rules of substantive and procedural law as were involved in the Secretary's proceeding.[12] The Pennsylvania act was, therefore, equally inapplicable to the proceeding in the district court. The appellants' defense based upon the statute was accordingly without merit and the action of the district court in denying the appellants' motions for a new trial and for judgment n. o. v. and in entering judgment upon the verdict in favor of the appellee were right.

Moreover the judgment was right even if we should assume that § 4 of the Pennsylvania Uniform Sales Act is substantive in effect. For that section provides[13] that a parol contract for the sale of goods shall be enforceable if "the buyer shall accept part of the goods * * * and actually receive the same." It is true that "acceptance of goods" is defined by the third paragraph of § 4 of the Pennsylvania Act,[14] and it may be doubtful whether the facts of this case would meet that definition. But that particular provision of the Pennsylvania act has been superseded, as to contracts to sell perishable agricultural commodities which come within the federal act, by the definition of "acceptance" appearing in § 46.2(s) of the regulation[15] issued by the Secretary of Agriculture under that act. That definition states, inter alia, that "Failure of the purchaser to notify the seller within a reasonable time, as defined in paragraph (r) of this section, that he rejects the produce; . . . shall constitute acceptance of the produce." Paragraph (r) of the section states that "reasonable time" means, with respect to rail shipments, not to exceed 24 hours after receipt of notice of arrival of the produce.

The jury was fully justified by the evidence in this case in finding that the appellants actually received and inspected the car of peas in controversy not later than 12:04 P.M. on March 27, 1944 and that they did not give the appellee notice of rejection until 8:30 P.M. on March 28th, more than 24 hours later. On these facts the Pennsylvania statute, modified by the federal law as to the meaning of "acceptance" as used therein, was complied with even if it was applicable, and the district court rightly so concluded.

The judgment of the district court will be affirmed.

---

12. This is not to say, of course, that a defense may not be raised on the appeal in the district court which was not actually raised in the proceeding before the Secretary of Agriculture. See Ernest E. Fadler Co. v. Hesser, 10 Cir., 1948, 166 F.2d 904, 906.

13. See note 2.

14. "Third. There is an acceptance of goods within the meaning of this section when the buyer, either before or after delivery of the goods, or any part thereof, expresses by words or conduct his assent to becoming the owner of those specific goods." 69 Pa.P.S. § 42.

