Charles A. McCLURE and Ruth H. McClure, suing on their own behalf and on behalf of all other stockholders of the Borne Chemical Company, Inc., similarly situated

v.

BORNE CHEMICAL COMPANY, Inc., Thomas E. Betner, William L. Less, Thomas A. Marino, the CEM Securities Corporation, Walter L. McManus, Marshall A. Jacobs, George E. Allen, Clyde E. Williams, Henry E. Brandli and H. Carl Northrup.

Borne Chemical Company, Inc., Thomas E. Betner, William L. Less, Thomas A. Marino, Marshall A. Jacobs, Clyde E. Williams and H. Carl Northrup, Appellants.

Charles A. McCLURE and Ruth H. McClure, suing on their own behalf and on behalf of all other stockholders of Borne Chemical Company, Inc., similarly situated

v.

BORNE CHEMICAL COMPANY, Inc., Thomas E. Betner, William L. Less, Thomas A. Marino, the CEM Securities Corporation, Walter L. McManus, Marshall A. Jacobs, George E. Allen, Clyde E. Williams, Henry E. Brandli and H. Carl Northrup.

CEM Securities Corporation and Walter L. McManus, Appellants.

Nos. 13353, 13354.

United States Court of Appeals Third Circuit.

Argued Feb. 7, 1961.

Decided July 5, 1961.

Rehearing Denied Sept. 19, 1961.

William T. Coleman, Jr., Philadelphia, Pa. (Harold E. Kohn, Bruce Kauffman, Dilworth, Paxson, Kalish, Kohn & Dilks, for Borne Chemical Co., Inc., and others; George V. Strong, Jr., Strong, Sullivan, Saylor, & Ferguson, Philadelphia, Pa., for CEM Securities Corp. and Walter L. McManus, on the brief), for appellants.

Arnold R. Ginsburg, Philadelphia, Pa., for appellees.

Before BIGGS, Chief Judge, and STALEY and HASTIE, Circuit Judges.

BIGGS, Chief Judge.

The question presented by these appeals is whether a shareholder who brings a derivative suit to enforce a corporate cause of action arising under Section 10(b), 15 U.S.C.A. § 78j(b), as implemented by Securities and Exchange Commission Rule 10b-5, and Section 29(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78cc, may be required to post security for costs, including reasonable attorney's fees.

The plaintiffs hold as joint tenants 100 shares [1] of stock of the defendant, Borne Chemical Company, Inc., a New Jersey corporation having its principal office in New Jersey. The defendants are the Borne Chemical Company, Inc., its officers and directors, and CEM Securities Corporation, a Delaware corporation. The action is alleged to have been brought by the plaintiffs "on behalf of themselves in their individual capacities as stockholders," as a "spurious class suit" on behalf of themselves and others similarly situated, and also "to enforce their derivative or secondary rights as stockholders" of Borne. It is alleged that the defendants violated Rule 10b-5 in connection with the sale by Borne to CEM of 10,000 shares of the company's authorized but unissued capital stock. The complaint alleges that the plaintiffs were fraudulently deprived of their pre-emptive rights with respect to the 10,000 shares and that the shares were sold at an improperly low price, and that the defendants engaged in certain manipulative practices affecting the market price of the shares. It is further asserted that the acts complained of were done in furtherance of a conspiracy between the officers and directors of Borne, the majority stockholders of Borne, CEM, and CEM's controlling stockholder. The complaint sets forth various activities alleged to be breaches of fiduciary duties by the defendants which in turn constituted violations of Rule 10b-5. The plaintiffs stipulated in the court below "that the causes of action * * * are all based upon violations of Rule X-10B-5" [2] by the defendants, with Section 29(b) of the Securities Exchange Act of 1934 providing a supporting basis for a cause of action by reason of the violations of Rule 10b-5. The plaintiffs claim "no other cause of action in this litigation against these defendants". Injunctive relief, an accounting and rescission of the sale of stock by Borne to CEM, and other extensive relief are prayed for.

The defendants did not file an answer but moved to require plaintiffs to post security for expenses including reasonable attorneys' fees. In their motion the defendants asserted a right to security for expenses and counsel fees under the Pennsylvania Act of April 18, 1945, P.L. 253, No. 114, § 2, 12 Pa.Stat. § 1322, under Section 11(e) of the Securities Act of 1933, as amended, 15 U.S.C.A. § 77k(e), "as well as under equitable principles and rules." The court below denied the motion on condition that the plaintiffs file a statement limiting their claims to causes of action arising under Rule 10b-5 and Section 29(b). The plaintiffs did file such a statement which was accepted by

---

1. Nine hundred and three thousand shares have been issued.

2. Rule 10b-5, 17 Code of Federal Regulations 240.10b-5, was adopted by the Commission in 1942. It provides as follows:

    "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

    "(1) to employ any device, scheme, or artifice to defraud,

    "(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

    "(3) to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person,

    in connection with the purchase or sale of any security."

the court below and the defendants have appealed.

The defendants make three arguments in support of their contention that a plaintiff who brings an action arising under Sections 10(b) and 29(b) of the Securities Exchange Act of 1934, 15 U.S. C.A. §§ 78j, 77cc, may be required to post security for expenses including reasonable attorneys' fees. These three arguments seek to overcome the fact that no provision of Section 10(b), Rule 10b–5 or Section 29(b) explicitly authorizes a court to require such security. First, it is contended that state law determines whether a plaintiff may be required to post security and that since both Pennsylvania, the State in which the court below sits and New Jersey, the State of incorporation and principal place of business of Borne Chemical Company, have security-for-expenses statutes, the defendants are entitled to the posting of security. Second, it is argued that under "general federal equity law" plaintiffs such as those at bar who bring derivative suits may be required to post security for expenses and that, therefore, even if state law be inapplicable the defendants are entitled to security. Third, the defendants assert that a security for expenses provision should be implied from Section 10(b) of the Securities Exchange Act of 1934 by analogy to other provisions of the Securities Acts which couple security for expenses provisions with provisions granting private rights of action. These arguments frame the three basic questions which must be considered. Preliminary to dealing with these questions, however, it is necessary to discuss the origin and nature of security for expenses statutes so that some of the fundamental considerations leading to our decision may be made plain.

Historically, the derivative suit has been the principal defense of the minority shareholder against abuses by the majority. In this era of the widening gulf between corporate control and corporate ownership, such suits have often served the further purpose of protecting the stockholders of a corporation against management which is sometimes unrepresentative and on occasion insufficiently concerned with the minorities' interests. Often where the wrongdoing is on the part of corporate officers and directors management has refused to act and where the wrongdoers control the corporation there is but small chance that the corporation itself will bring suit or vigorously prosecute the litigation. Equity, therefore, provided shareholders with the device of a derivative suit by means of which they could assert the interest of their corporation against management and third parties when those in control of the corporation were acting in breach of their trust.

There were, of course, obvious dangers of abuse inherent in a device that allowed an individual member of an association, whose interest might be very small, to bring a suit on behalf of the entire association. Consequently, equity itself imposed many limitations on the use of the derivative suit designed to prevent its use as a means to usurp the power of management, of the majority, or to turn the suit to private advantage. For example, equity imposed the requirements of exhaustion of intracorporate remedies,[3] of contemporaneous ownership,[4] and also

3. This doctrine originated in the chancery case of Foss v. Harbottle, 2 Hare 461 (Eng.Ch.1843). The leading case in this country is Hawes v. City of Oakland, 1882, 104 U.S. 450, 26 L.Ed. 827. This decision is now embodied in Rule 23(b), Fed.R.Civ.Proc., 28 U.S.C. See generally the comprehensive treatment of the subject in Note, Demand on Directors and Shareholders as a Prerequisite to a Derivative Suit, 73 Harv.L.Rev. 746 (1960).

4. See e. g., Home Fire Ins. Co. v. Barber, 1903, 67 Neb. 644, 93 N.W. 1024, 60 L.R.A. 927. Many courts have taken a contrary view, holding that a shareholder who purchases his stock after the wrong occurred may nevertheless maintain a derivative suit on behalf of the corporation. See, e. g., Pollitz v. Gould, 1911, 202 N.Y. 11, 94 N.E. 1088, 38 L.R.A.,N.S., 988; Parsons v. Joseph, 1891, 92 Ala. 403, 8 So. 788. In 1944 the New York legislature overruled the de-

defined an area of managerial discretion by developing the so-called "business judgment rule."[5] Despite these safeguards and others, however, there were many who felt that the abuses of the derivative suit as it had developed outweighed its utility as a tool by which corporate democracy and fiduciary duties could be enforced. Certain stockholders, it was observed, would sue the management in behalf of the corporation with no thought of gaining a corporate recovery but solely in the hope that management would "buy them off" by entering into a secret settlement with them. Some suitors gained financial advantages only by virtue of their nuisance value without having ever had a bona fide claim on behalf of the corporation. Moreover, it was vehemently suspected that many derivative suits were brought in the interest of attorneys seeking fees to be paid from the corporate treasury rather than by their clients who were often shareholders having so small an interest in the corporation as to render their ostensible concern for its welfare almost incredible.

In 1944 the Legislature of the State of New York enacted Section 61-b of the New York General Corporation Law, McKinney's Consol.Laws, c. 23, the first state security for expenses provision.[6] The law was based on a report made by Franklin S. Wood for a committee of the New York State Chamber of Commerce which contained an analysis of approximately 1300 derivative suits brought in the New York courts between 1932 and 1942 and which concluded that the equitable device was being abused. See Wood, Survey and Report Regarding Stockholders Derivative Suits (1944). Similar statutes were adopted in Maryland,[7] New Jersey[8] and Pennsylvania[9] in 1945. Subsequently, California[10] and Wisconsin[11] adopted security for expenses statutes that vary substantially from the New York model. The majority of state legislatures have not enacted such legislation.

Generally a security for expense statute provides that shareholders with relatively small holdings may be required, by their corporation, to post bond for reasonable expenses including counsel fees which may be incurred, either directly or indirectly, by the corporation as a condition precedent to maintaining or recovering in a derivative suit. The theory is that the derivative suit is most abused by shareholder-plaintiffs who have relatively minor financial interests in the corporation. State legislatures have differed in their conceptions of what constitutes a minor financial interest for the purposes of these statutes. The New York and New Jersey statutes provide that security may be required of any derivative plaintiff who holds less than 5%

cision in the Pollitz case in enacting Section 61 of the N.Y.Gen.Corp.Code.

5. For statements of this rule see Hawes v. City of Oakland, supra, 104 U.S. at pages 456–457; Corbus v. Alaska Treadwell Gold Mining Co., 1903, 187 U.S. 455, 463, 23 S.Ct. 157, 47 L.Ed. 256.

6. Section 61-b provides: "In any action instituted or maintained in the right of any foreign or domestic corporation by the holder or holders of less than 5 per centum of the outstanding shares of any class such corporation's stock or voting trust certificates, unless the shares or voting trust certificates held by such holder or holders have a market value in excess of $50,000, the corporation in whose right such action is brought shall be entitled at any stage of the proceedings before final judgment to require the plain-

tiff or plaintiffs to give security for the reasonable expenses, including attorney's fees, which may be incurred by it in connection with such action and by the other parties defendant in connection therewith for which it may become subject * * *. The amount of such security may thereafter from time to time be increased or decreased in the discretion of the court having jurisdiction of such action upon showing that the security provided has or may become inadequate or is excessive."

7. Rule 328, Maryland Rules of Procedure.

8. 14 N.J.Stat.Ann. § 3–15.

9. 12 Pa.Stat. § 1322.

10. Cal.Corp.Code § 834.

11. Wis.Stat. § 180.405(4).

of the aggregate par or stated capital value of all the outstanding shares of the corporation unless the market value of his shares is in excess of $50,000. Pennsylvania requires that the plaintiff have a 5% interest in the corporation regardless of the market value of his shares. Thus, the Pennsylvania statute brings many more shareholders of widely held corporations within its scope while often making it easier for shareholders of closely held corporations to bring suit. In California security may be required only upon a showing by the party moving for security that there is no reasonable probability that the suit will benefit the corporation or that the moving party did not participate in the transaction complained of. Moreover, under the California statute, not only the corporation but also other defendants in a derivative suit may require a plaintiff to post security.

From their inception security for expenses statutes have been the subject of heated controversy. Governor Thomas E. Dewey of New York in supporting the New York provision and its correlative contemporaneous ownership statute, stated in a memorandum accompanying the two bills: "These two bills represent an effort to meet the problem created by the baseless so-called 'strike' stockholder suit against corporation directors and officers. In recent years a veritable racket of baseless lawsuits accompanied by many unethical practices has grown up in this field. Worse yet, many suits that were well based have been brought, not in the interest of the corporation or of its stockholders, but in order to obtain money for particular individuals who had no interest in the corporation or in its stockholders. Secret settlements—really pay-offs for silence—have been the subjects of common suspicion. * * * These bills represent a healthy experiment in cleansing our law courts of disreputable practices. * * *" The opposite view is well exemplified by the following passage from Hornstein, New Aspects of Stockholders' Derivative Suits, 47 Colum.L.Rev. 1, 3, 5 (1947): "The New York state legislation, since aped in other commercial states, was clearly designed to insulate corporate management from investors who discovered that the corporation had been looted. Had the legislators really been concerned with the so-called 'abuse' of stockholders' suits, the extortionate secret settlement, the remedy was painfully obvious: to bar secret settlements. This patent solution, twice recommended by the Law Revision Commission, was studiously avoided by the legislators. Instead, they adopted a series of laws of which not one was sponsored or recommended by the Law Revision Commission or the Judicial Council. The most drastic of these laws bars suits unless almost prohibitive conditions are met, * * * Meanwhile, the effective bar to suits, which the sponsors of the law hoped would result, has in fact resulted. In the two and a half years since enactment of the law, there appear to have been started in the Supreme Court, New York County, only four stockholders' suits involving widely-held corporations, three of which have been dismissed for non-compliance with the new laws. These four suits amounted to less than two a year, as contrasted with an annual average of over fifty a year in the preceding decade." For similar views see House, Stockholders' Suits and the Coudert-Mitchell Laws, 20 N.Y.U. L.Q. 377 (1945); Hornstein, The Death Knell of Stockholders' Derivative Suits in New York, 32 Calif.L.Rev. 123 (1944); Ballantine, Corporations, § 157(a) (rev. ed. 1946). We note that there is one proposition about which there is no controversy. A security for expenses statute poses a very serious obstacle to those shareholders to whom it applies who desire to maintain derivative suits.

I.

The Inapplicability of State Security for Expenses Statutes in Derivative Suits brought to enforce Rights arising under Sections 10(b) and 29(b) of the Securities Exchange Act of 1934.

The Pennsylvania security for costs statute is clearly inapplicable even

though this action was commenced in a federal court sitting in that State. In Erie R. R. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, it was held that the substantive rules of the state in which a federal court sits are the rules of decision applicable in diversity actions brought in that court. That security for expenses statutes are "substantive" law as that term was used in the Erie decision was decided in Cohen v. Beneficial Indus. Loan Corp., 1949, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528. In the present case, however, we are not concerned with a cause of action in which federal jurisdiction depends on diversity of citizenship, but with a case arising under a federal statute which itself confers jurisdiction upon the federal district courts. See Section 27(a) of the Act, 15 U.S.C.A. § 78aa. The Erie doctrine and the holding in the Cohen case are, therefore, not in point. See Rothenberg v. H. Rothstein & Sons, 3 Cir., 1950, 183 F.2d 524, 528, 21 A.L.R.2d 832.

The defendants argue, however, that the Pennsylvania statute should be applied in the present case on analogy to the doctrine whereby local statutes of limitations are applied in cases arising under federal statutes which contain no provisions for limitations of action. We conclude, however, that the reasoning underlying that doctrine renders it inapposite in the case of a security for expenses statute. When Congress provides for limitations in a federal statute granting a right of action that provision is, of course, governing. But Congress on occasion does not make such provision and the question arises as to how to interpret congressional silence. In the landmark case of Campbell v. City of Haverhill, 1895, 155 U.S. 610, 15 S.Ct. 217, 220, 39 L.Ed. 280, it was decided that in the absence of a limitations provision in an act of Congress, the statutes of limitations of the several states apply. The reason was that statutes of limitations embody a "cardinal principle of modern law" to which, it should be presumed, Congress intended to subject rights of action which it has created. In Holmberg v. Arm-

brecht, 1946, 327 U.S. 392, 66 S.Ct. 582, 584, 90 L.Ed. 743, the Supreme Court reaffirmed the rationale articulated in the Campbell case. The Holmberg case presented the question whether local statutes of limitations as interpreted by state courts attach to federal statutory rights of action for which the sole remedy is in equity. Mr. Justice Frankfurter, writing for the Court, observed that, "As to actions at law, the silence of Congress has been interpreted to mean that it is federal policy to adopt the local law of limitation." But where Congress creates a right for which the sole remedy is in equity and "leaves to the federal courts the formulation of remedial details, it can hardly expect them to break with historic principles of equity in the enforcement of federally-created equitable rights." The Court went on to hold that federal equitable doctrines were applicable to mitigate the effect of the local statute of limitations. It is apparent that the doctrine of applying local statutes of limitation in cases at law and laches in suits in equity, Congress being silent, is based on the presumed congressional intent to have courts judicially imply a limitation provision. The presumption is justified by the fundamental and universal nature of the concept of limitation and the improbability of Congress having intended to create a right not subject to a limitation period.

In the present case we are not dealing with congressional silence on limitations but silence on security for expenses. Unlike statutes of limitations, security statutes do not embody traditional principles of law which are universally accepted. There is sharp dispute as to their desirability and efficacy. Moreover, only a minority of our states have enacted such statutes. Under these circumstances a presumption that Congress intended that courts should imply a security requirement from a statute, granting an express or an implied private right of action seems unjustified. Congress cannot be presumed to have authorized the courts to engraft a unique and controversial limitation upon a statutory

right through its silence on the subject of that limitation.

The question whether the New Jersey security for expenses statute applies poses a subtler problem.[12] Pennsylvania's only significant contact with the present litigation is that it is the State in which the court below is located. Thus, since we have determined that both the Erie doctrine and the doctrine of presumed congressional adoption of local statutes of limitations are inapposite, we have disposed of the defendants' contention that Pennsylvania law is applicable. New Jersey, however, is the State of incorporation of Borne and also the site of its principal office. As such New Jersey has a clear interest in the relationships between the stockholders and the management of the corporation. Furthermore, as the Supreme Court pointed out in Cohen v. Beneficial Indus. Loan Corp., supra, 337 U.S. at pages 549, 550, 69 S.Ct. at page 1227, "The very nature of the stockholders' derivative action makes it one in the regulation of which the legislature of a state has wide powers. Whatever theory one may hold as to the nature of the corporate entity, it remains a wholly artificial creation whose internal relations between management and stockholders are dependent upon state law and may be subject to most complete and penetrating regulation, either by public authority or by some form of stockholder action. * * *

We conclude that the state has plenary power over this type of litigation."

As can be gathered from our general discussion of security for expenses statutes, the New Jersey Legislature, when it enacted its statute, made a far-reaching and fundamental alteration of existing stockholders-management relationships. The right of a shareholder of a New Jersey corporation to bring a derivative suit was severely limited. Should this limitation be adhered to by a federal court when the corporate right that the plaintiff seeks to enforce derivatively arises under federal law? The answer to this question lies in both an examination of the state security for expenses requirement and the federal right under Rule 10b-5.

In The Federal Courts and the Federal System, at p. 435, Professors Hart and Wechsler, noting "[T]he interstitial character of federal law," observe that "Federal legislation, on the whole, has been conceived and drafted on an *ad hoc* basis to accomplish limited objectives. It builds upon legal relationships established by the states, altering or supplanting them only so far as necessary for the special purpose. Congress acts, in short, against the background of the total *corpus juris* of the states in much the way that a state legislature acts against the background of the common law, assumed to govern unless changed by legislation." Many instances of this phenomenon,

---

12. 14 N.J.S.A. § 3-15 provides: "In any action instituted or maintained in the right of any domestic or foreign corporation by the holder or holders of shares, or of voting trust certificates representing shares, of such corporation having a total par value or stated capital value of less than five per centum (5%) of the aggregate par value or stated capital value of all the outstanding shares of such corporation's stock of every class, exclusive of shares held in the corporation's treasury, unless the shares or voting trust certificates held by such holder or holders have a market value in excess of fifty thousand dollars ($50,000.00), the corporation in whose right such action is brought shall be entitled, at any stage of the proceeding before final judgment, to require the complainant or complainants to give security for the reasonable expenses, including counsel fees, which may be incurred by it in connection with such action and by the other parties defendant in connection therewith for which it may become subject pursuant to law, its certificate of incorporation, its by-laws or under equitable principles, to which the corporation shall have recourse in such amount as the court having jurisdiction shall determine upon the termination of such action. The amount of such security may thereafter, from time to time, be increased or decreased in the discretion of the court having jurisdiction of such action upon showing that the security provided has or may become inadequate or is excessive."

unique to a federal system, can be found in the study of almost all of the myriad federal regulatory schemes. For example, in Price v. Gurney, 1945, 324 U.S. 100, 65 S.Ct. 513, 89 L.Ed. 776, the question was whether certain shareholders of a corporation could act for the corporation in filing a petition under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. The court held that the question of the authority of persons filing such petitions to act on behalf of the corporation was controlled by local law even though the petition was to be filed pursuant to federal statute. See also Davies Warehouse Co. v. Bowles, 1944, 321 U.S. 144, 64 S.Ct. 474, 88 L.Ed. 635; Board of Commissioners of Jackson County v. United States, 1939, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313. See generally Mishkin, The Variousness of "Federal Law", 107 U.Pa.L.Rev. 797 (1957). Thus, in the present case it could be argued that although the private rights of action granted by the Securities Acts, including those brought pursuant to Section 10(b) and 29(b), are federal rights of action, the question of which stockholders are entitled to enforce the corporate right of action arising under these federal statutory provisions is governed by the law of New Jersey, the state of incorporation and principal place of business. Arguably, it would follow that the shareholder-plaintiffs cannot proceed in the present case without posting security for expenses since, under New Jersey law, they could not proceed free of the security for expenses requirement.

In Fielding v. Allen, 2 Cir., 181 F.2d 163, 167–68, certiorari denied, sub nom. Ogden Corp. v. Fielding, 1950, 340 U.S. 817, 71 S.Ct. 46, 95 L.Ed. 600, the Court of Appeals for the Second Circuit had before it a question almost identical to that with which we are presently concerned. There a stockholder brought a derivative suit in part to enforce an alleged cause of action arising under the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq. It was asserted that a conspiracy existed between corporate officers, directors and others to fraudulently divest the corporation of assets in violation of the federal act. The district court granted the defendant's motion that the plaintiffs be required to post security for expenses pursuant to Section 61–b of the New York General Corporation Law. In holding the New York statute inapplicable to the federal count the Court of Appeals reasoned as follows: "Our next inquiry is whether this federally-based cause of action is subject to section 61–b. The right to be vindicated is that of Ogden Corporation. Since the corporation will not itself assert the right, equity allows a minority shareholder, under the circumstances alleged in the complaint, 'to step into the corporation's shoes and to seek in its right the restitution he could not demand in his own.' [Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 548, 69 S.Ct. 1221, 93 L.Ed. 1528; see also Hawes v. City of Oakland, 104 U.S. 450, 460, 26 L.Ed. 827]. Although it is clear that Ogden's right is federal in nature, the source of the shareholder's right to sue on it requires some further examination. If his right to maintain this derivative action is one which he possesses only by virtue of state law, his suit may be subject to the condition which New York has imposed even though the corporate right is federal. This we need not decide, however, for we think that the stockholder's right to maintain a derivative action on a corporate right federal in nature is federally conferred. As long ago as Payne v. Hook, 7 Wall. 425, 430, 19 L.Ed. 260, it was held: 'The equity jurisdiction conferred on the Federal courts is the same that the High Court of Chancery in England possesses; is subject to neither limitation or restraint by State legislation, and is uniform throughout the different States of the Union.' [See also Sprague v. Ticonic Nat. Bank, 307 U.S. 161, 164, 59 S.Ct. 777, 83 L.Ed. 1184; Guaranty Trust Co. of New York v. York, 326 U.S. 99, 105, 106, 65 S.Ct. 1464, 89 L.Ed. 2079].

"It may be conceded that this doctrine no longer applies in diversity cases. There the policy of uniformity within the federal system must give way to the

policy of uniformity between the federal court and the courts of the state in which it sits. [Ruhlin v. New York Life Ins. Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290; Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079.] But we think that the policy enunciated in Payne v. Hook, supra, retains its vigor in non-diversity cases. In such cases, if a form of relief exists within the ambit of the federal court's historic equity jurisdiction, it should be available without reference to the peculiar requirements of local law. As Professor Moore puts it: 'Whether equitable relief should be granted and to what extent in federal matters is a matter properly within the domain of federal equity jurisprudence. Here, unlike in diversity cases, the federal courts are free of state remedial law.' 2 Moore's Federal Practice (2d ed.), Par. 2.09, p. 456.

"The stockholder's derivative suit is such a form of relief. The action was early recognized by Chancery. [Foss v. Harbottle, 2 Hare 461.] It has long been familiar in the federal courts. [Dodge v. Woolsey, 18 How. 331, 15 L.Ed. 401; Hawes v. City of Oakland, 104 U.S. 450, 26 L.Ed. 827.] And since the passage of the Act of March 3, 1875, 18 Stat. 470 [see 28 U.S.C.A. § 1331], conferring federal jurisdiction over cases arising under the Constitution and laws of the United States, many federal questions of importance have been raised in stockholder's derivative actions. [See, e. g., Pollock v. Farmers' Loan & Trust Co., 157 U.S. 429, 553, 15 S.Ct. 673, 39 L.Ed. 759; Ex parte Young, 209 U.S. 123, 143, 28 S.Ct. 441, 52 L.Ed. 714; Brushaber v. Union Pacific R. Co., 240 U.S. 1, 9, 36 S.Ct. 236, 60 L.Ed. 493; Ashwander v. T. V. A., 297 U.S. 288, 318, 56 S.Ct. 466, 80 L.Ed. 688. And see 13 Fletcher Cyclopedia Corporations Sec. 5987]. Consequently we think that the right of a stockholder to sue on his corporation's federal cause of action is itself federal in nature and therefore not subject to special requirements for cognate actions under state law. [See Stella v. Kaiser, D.C.S.D.N.Y., 81 F.Supp. 807.] Accordingly the plaintiffs ought not to have been required to furnish security under section 61–b as a condition precedent to the prosecution of their second cause of action. * * * It must be conceded, however, that the question is not free from doubt."

We agree with the result reached by the Second Circuit in the Fielding case and with its reasoning that in a case such as that at bar the policy of uniformity within the federal system is stronger than any policy of conformity with local rules. As we have pointed out only a minority of states have adopted security statutes and the statutes differ from one another. There is much to be said for the argument that a federal right, uniform in its nature throughout the nation, should be uniformly enforceable pursuant to federal standards. That Congress intended uniform enforcement of rights arising under The Securities Exchange Act of 1934 is indicated strongly by the fact that it gave exclusive jurisdiction to the United States courts of any suit brought to enforce the duties or liabilities created by the Act. See Section 27 of the Act, 15 U.S.C.A. § 78aa.

There is a further difficulty with the argument that the right of action under Section 10(b) should be deemed to be superimposed upon state law limiting the class of shareholders eligible to bring derivative suits. One of the most important factors in those cases applying state law to federally-based causes of action has been a presumption that Congress has acted with established state doctrine in mind and has thus intended that state law be "absorbed" into the federal statute. See, e. g., Davies Warehouse Co. v. Bowles, 1944, 321 U.S. 144, 64 S.Ct. 474, 88 L.Ed. 635. In the instant case, however, the Securities Exchange Act of 1934 was enacted over a decade before the first state security for expenses statute. It cannot be argued successfully therefore, that Congress had these statutes in mind as a background against which it enacted the Exchange Act. Moreover this is not a case in which state law must

be applied in adjudicating a federal right because there is no body of federal law with respect to the question presented. In De Sylva v. Ballentine, 1956, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 the determinative issue was whether illegitimate children were "children" within the meaning of the Copyright Act, 17 U.S.C. § 24. The Supreme Court looked to state domestic relations law for the answer, reasoning, in part, as follows: "The scope of a federal right is, of course, a federal question, but that does not mean that its content is not to be determined, by state, rather than federal law. * * * This is especially true where a statute deals with a familial relationship; there is no federal law of domestic relations, which is primarily a matter of state concern. * * * " 351 U.S. at page 580, 76 S.Ct. at page 980. See Mishkin, The Variousness of "Federal Law", 105 U.Pa.L.Rev. 797, 820–24 (1957). In the present case there is a comprehensive body of federal law with respect to the bringing of derivative suits. Indeed, the derivative suit, and the limitations upon its use, were initially developed in the federal courts. See Dodge v. Woolsey, 1855, 18 How. 331, 59 U.S. 331, 15 L.Ed. 401; Hawes v. City of Oakland, 1882, 104 U.S. 450, 26 L.Ed. 827. There is, therefore, no compulsion in the present case to adopt state law because it is the only developed body of law pursuant to which this federal right may be enforced.

■ What is more important, we do not believe that Sections 10(b) and 29(b) of the Securities Exchange Act should be construed as being superimposed upon the stockholder-management relationship defined by state security for expenses statutes, since the federal provisions are a part of a statutory scheme which had as its purpose the creation of a new federal law of management-stockholder relations and which, therefore, may not be subordinated to limitations such as security for expenses statutes, reflecting state policy in the same area. It is true that federal law often depends upon state-created legal relationships. Admittedly,

where, precedent to the enforcement of a federal right, a question arises on the resolution of which Congress has been silent, state law will be controlling in many instances. But state law will only control where that law will not cut across the federal interests receiving expression in the federal right sought to be enforced. This principle was best enunciated by Mr. Justice Frankfurter in Board of Commissioners, supra, 308 U.S. at pages 350–352, 60 S.Ct. at page 288, as follows: "With reference to other federal rights, the state law has been absorbed, as it were, as the governing federal rule not because state law was the source of the right but because recognition of state interests was not deemed inconsistent with federal policy. * * * In the absence of explicit legislative policy cutting across state interests, we draw upon a general principle that the beneficiaries of federal rights are not to have a privileged position * * *." See also D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp., 1942, 315 U.S. 447, 467–475, 62 S.Ct. 676, 86 L.Ed. 956. In the present case we are construing two sections of the Securities Exchange Act of 1934. That Act deals with the protection of investors, primarily stockholders. It creates many managerial duties and liabilities unknown to the common law. It expresses federal interest in management-stockholder relationships which theretofore had been almost exclusively the concern of the states. Section 10(b) imposes broad fiduciary duties on management vis-a-vis the corporation and its individual stockholders. As implemented by Rule 10b–5 and Section 29(b), Section 10(b) provides stockholders with a potent weapon for enforcement of many fiduciary duties. It can be said fairly that the Exchange Act, of which Sections 10(b) and 29(b) are parts, constitutes far reaching federal substantive corporation law. See the illuminating summary of the background of the Securities Acts in Loss, Securities. Regulation 3–16, 56–82 (1951).

As we have pointed out, state security for expenses statutes are more than pro-

cedural modifications. They are, rather, fundamental regulations of the management-shareholder relationship. As such they cut across a similar federal interest embodied in the Securities Acts. If held to be applicable in actions under Section 10(b) they would limit severely the scope of that section in an area comprehended by the statutory scheme. Where a unique and controversial state doctrine alters relationships that are the principal concern of a federal statute that doctrine will not be applied to limit rights arising under the federal statute. Thus state interest in the present suit must be subordinated to the federal policy occupying the same field. We conclude, therefore, that the question whether security for expenses may be required in the present case must be resolved by reference to federal law. See Rothenberg v. H. Rothstein & Sons, 3 Cir., 1950, 183 F.2d 524, 21 A.L.R.2d 832.

## II.

Under "General Federal Equity Law" a Derivative Plaintiff enforcing a Corporate Right of Action pursuant to Rule 10b–5 may not be required to post Security for Expenses.

■ The defendants have argued that even if state law is inapplicable in the present case the plaintiffs may be required to post security for expenses under "general federal equity law". The defendants have not, however, cited any authority for this proposition and our research has disclosed none. We are of the opinion that the contention of the defendants is erroneous.

■ Traditionally the courts of both our state and federal systems have taxed costs only "as between party and party." Nevertheless, in certain exceptional classes of cases courts of equity have taxed costs "as between attorney and client". That is they have awarded litigation expenses, including reasonable attorney's fees, to the prevailing party. The law on this subject is set out in great detail in Guardian Trust Co. v. Kansas City Southern Ry., 8 Cir., 1928, 28 F.2d 233. See also Sprague v. Ticonic Nat.

Bank, 1939, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184. All of the cases in which litigation expenses have been awarded to the prevailing party had proceeded to final judgment. In none of those cases was security for expenses required of either of the parties.

■ There are certain exceptional cases in which a United States district court has inherent power to require security for costs. See 6 Moore, Federal Practice 1325–32 (2 ed. 1953). Security for costs may also be required in those narrow situations in which local rules of the district court so provide. In the Eastern District of Pennsylvania, for example, where this suit was brought, Local Rule 35 authorizes a district judge to require a plaintiff who is not a resident of the district to post security for costs. But, the distinction between security for costs and security for expenses, must be kept in mind. The former usually involves a relatively small initial outlay on the part of the plaintiff, whereas the latter, including as it does all reasonable litigation expenses, often requires a very large outlay by the plaintiff precedent to his obtaining judgment. We have found no case in which a court has required security for expenses, as opposed to security for costs, without express statutory authority. Nor have we found a case which has posited circumstances under which such an undertaking might be required. We therefore, reject the defendants' argument on this point.

In so doing we are not unmindful of our obligation to preserve and foster the tradition of growth in federal equitable doctrine. As we have pointed out previously, however, to require security for expenses of derivative plaintiffs would be to adopt a rule about which there is much controversy. In addition, it would entail the imposition of a severe limitation on a means of enforcing federal law relating to stockholder-management relationships. Too many legislative, as opposed to judicial, considerations are involved in making such a decision. In such circumstances a court should adhere to traditional practice. As we have pointed

out, that practice has not permitted a federal equity court to require the posting of security for expenses.

## III.

A Security for Expenses Provision may not be implied from Section 10(b) and Rule 10b–5 by Analogy to Other Provisions of the Securities Act which couple Security for Expenses Provisions with Provisions granting Private Rights of Action.

In the landmark case of Kardon v. National Gypsum Co., D.C.E.D.Pa.1946, 69 F.Supp. 512, Chief Judge Kirkpatrick held that a violation of Section 10(b) and Rule 10b–5 which implements it renders the violator liable to the members of the class for whose benefit the statute was enacted and the Rule promulgated. Neither Section 10(b) nor Rule 10b–5 explicitly grants a private right of action. The basis of the Kardon doctrine was the common law tort rule, as articulated in Section 286 of the Restatement of Torts, that a private right of action may be implied from a statute in favor of those whose interests the statute was designed to protect.

It is arguable that where a private remedy is implied from a statute in which security for expenses provisions have been coupled with the provisions in which private rights of action have been granted explicitly, a security for expenses limitation should be implied along with the implied private remedy. This argument is, of course, tenable only where the statute evinces a clear policy in favor of security for expenses limitations. Even then, we believe, there would be a serious question whether a court, in the proper exercise of its judicial function, could carry the traditional tort doctrine of implication of private remedies to such a length. With respect to Section 10(b) and Rule 10b–5, however, we do not have to deal with the extent to which we can impose limitations on private rights of action implied from statutes because we have concluded that the Securities Acts do not evince a sufficiently clear or uniform policy in favor of se-

curity for expenses provisions to justify the imposition of such a limitation on the private right of action which has been implied from Section 10(b).

Section 11 of the Securities Act of 1933 confers on buyers of securities rights of action against persons connected with the making of untrue statements in registration statements. Subsection (e) of Section 11, as amended, 15 U.S.C.A. § 77k(e), provides in part that "In any suit under this or any other section of this title the court may, in its discretion, require an undertaking for the payment of the costs of such suit, including reasonable attorney's fees, and if judgment shall be rendered against a party litigant, upon the motion of the other party litigant, such costs may be assessed in favor of such party litigant (whether or not such undertaking has been required) if the court believes that the suit or the defense to have been without merit, in an amount sufficient to reimburse him for the reasonable expenses incurred by him, in connection with such suit, such costs to be taxed in the manner usually provided for taxing of costs in the court in which the suit was heard." This provision also applies to suits under Section 12 of the Act, 15 U.S.C.A. § 77*l*, which grants remedies to buyers against fraudulent sellers or those who sell in violation of Section 5 of the Act, 15 U.S.C.A. § 77e. It should be noted that this provision is not limited to derivative suits and applies equally to plaintiffs and defendants. A further difference between this provision and the usual state statute is that it is not mandatory but discretionary with the trial court as to whether to require security. Furthermore, expenses are not assessed against a party merely because he loses the suit, but only in the case of a non-meritorious suit or defense.

Section 9(e) of the Exchange Act, 15 U.S.C.A. § 78i, which confers a right of action on persons injured by willful unlawful manipulations of security prices, has a somewhat different security for expenses provision which is as follows: "In any such suit the court may, in its

discretion, require an undertaking for the payment of the costs of such suit, and assess reasonable costs, including reasonable attorneys' fees, against either party litigant." Section 18(a) of the Act, 15 U.S.C.A. § 78r, dealing with liability for misleading statements contains an identical provision.[13] But Section 16 (b) of the Exchange Act, 15 U.S.C.A. § 78p, which grants rights of action to shareholders injured by "insider-trading" has no security for expenses requirement. Similarly, Section 29(b) of the Act, pursuant to which this action is brought in part, does not contain a security requirement.

It is apparent that the Acts do not manifest sufficiently clear or uniform policy favoring security for expenses to allow us to imply such a limitation from Section 10(b). Were we to attempt to do so we would have to discover some reason for following the course Congress took with respect to the Securities Act and Sections 9(e) and 18(a) of the Exchange Act rather than that exemplified by Section 16(b). But there seems no rational basis for concluding that the right of action implied from Section 10(b) bears a greater similarity to the sections limited by security requirements than it does to Section 16(b) which is unencumbered by that requirement. Indeed, a persuasive argument could be made that the plaintiffs' complaint in the present case, alleging as it does fraudulent dealings by insiders to the detriment of stockholders, sounds as much in Section 16(b) as in any other liability section contained in the Acts. Moreover, even if we decided against the analogy to 16(b) we would be faced with the impossibility of making a rational choice between the provision contained in Section 11(e) on the one hand and Sections 9(e) and 18(a) on the other. For these reasons we decline to imply a security for expenses requirement from Section 10(b) or Rule 10b-5.[14]

We conclude therefore that a shareholder who brings a derivative suit to enforce a cause of action arising under Section 10(b), as implemented by Rule 10b-5, and Section 29(b) of Securities Exchange Act of 1934, may not be required to post security for expenses. Our holding is in accord with that of the Court of Appeals for the Second Circuit in Fischman v. Raytheon Mfg. Co., 1951, 188 F.2d 783, 788-789. It also agrees with the statement of the law appearing in Professor Loss's Securities Regulation (1951) at pp. 1055, 1094, n. 493, 1096.

The order appealed from will be affirmed.

13. Courts have been reluctant to require plaintiffs to post security for expenses even pursuant to the explicit provisions of the Securities Acts. See Loss, Securities Regulation 1093-94 (1951). Professor Loss suggests that the courts which have considered the problem were influenced by the readiness with which plaintiff's motives are attacked in stockholder suits. See Craftsman Finance & Mortgage Co. v. Brown, D.C.S.D.N.Y. 1945, 64 F.Supp. 168.

14. Borne does not contend that security for expenses may be required of the plaintiffs with respect to that part of the cause of action which is based on Section 29(b). It is apparent that our reasoning as to Section 10(b) and Rule 10b-5 is equally applicable to the question whether security for expenses may be required of a plaintiff asserting a cause of action arising under Section 29(b). Moreover, it has been held that Section 29(b) grants an express right of action as opposed to the implied right of action under Section 10(b). See Kardon v. National Gypsum Co., D.C.E.D.Pa.1946, 69 F.Supp. 512. If this view of Section 29 (b) be accepted, the fact that Congress did not attach a security requirement to that Section would be conclusive.